# EXHIBIT A

WOLLMUTH MAHER & DEUTSCH LLP
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Ryan A. Kane, Esq.
500 Fifth Avenue, 12th Floor
New York, New York 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
Email: pdefilippo@wmd-law.com
       jlawlor@wmd-law.com
       rkane@wmd-law.com

*Counsel for Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Star Freight & Trading Co., Limited, and Mars Partner Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| XINYUAN REAL ESTATE CO., LTD., | Case No.: 25-_____ (___) |
| Debtor. | |

**STATEMENT OF THE PETITIONING CREDITORS IN SUPPPORT OF THE INVOLUNTARY CHAPTER 11 PETITION AGAINST XINYUAN REAL ESTATE CO., LTD.**

Pursuant to section 303 of title 11 of the United States Code (the "Bankruptcy Code"), Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Star Freight & Trading Co., Limited, and Mars Partner Limited (together, the "Petitioning Creditors") filed an involuntary petition (the "Involuntary Petition") against Xinyuan Real Estate Co., Ltd. (the "Debtor") party to that certain indenture, dated as of January 25, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "Indenture"). The Involuntary Petition was filed as the Debtor timely failed, and continues to fail, to pay approximately $65.8

million in principal and interest (plus continually accruing interest, fees, and other amounts) due and owing to holders of 14.0% Senior Notes Due 2024 (the "Notes" and the holders thereof, the "Noteholders") and is thus not paying its debts as they become due. The Petitioning Creditors, by and through the undersigned counsel, hereby submit this statement in support of the Involuntary Petition, to inform the Court as follows:

## BACKGROUND

1. The Debtor is an exempted company incorporated with limited liability under the laws of the Cayman Islands. The Debtor is a NYSE-listed holding company that operates primarily through its Chinese subsidiaries to develop real estate properties. Because the Debtor is incorporated outside of the United States, the Debtor's common stock can only be traded on the NYSE in the form of American Depositary Shares ("ADS"). Upon purchasing an ADS, JP Morgan issues an American Depositary Receipt ("ADR") evidencing ownership of the underlying ADS.

2. On or about January 25, 2021, the Debtor, as the issuer, executed the Indenture with Citicorp International Limited, as trustee. Under the Indenture, the Debtors issued the Notes in an aggregate principal amount of $170,000,000. As set forth in the Indenture, the Indenture required the Debtor to repay the principal and any unpaid and accrued interest on the final maturity date of January 25, 2024 (the "Maturity Date"). The Debtor failed to make such payment on the Maturity Date.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The Debtor is eligible for relief under chapter 11 of the Bankruptcy Code. Section 109(a) of the Bankruptcy Code provides, in pertinent part, that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. § 109(a).

5. Upon information and belief, the Debtor has property in the United States.

6. According to publicly available SEC filings,[1] the Debtor holds $116,793,448 of its own stock in treasury shares. These shares are held in the form of ADSs by a depositary, with each ADS representing twenty common shares. Pursuant to a Deposit Agreement entered into on December 11, 2007, JP Morgan serves as the depositary for the Debtor's ADSs.[2] This Deposit Agreement is governed by New York law. JP Morgan holds the Debtor's ADSs in the United States, its principal office being located at 383 Madison Avenue, Floor 11, New York, New York 10179. Shares in a company, such as these ADSs, are a form of intangible property, akin to stock ownership. This intangible property is located in New York and subject to New York law. Therefore, the Debtor has intangible property in New York. It is well-established that intangible property is sufficient under section 109. *See In re Navon*, 364 B.R. 850, 852-53 (D. Conn. 2007) (holding that stock located within the United States established the property requirement in section 109(a)); *In re Meade*, 84 B.R. 106, 107 (Bankr. S.D. Oh. 1988) ("Stocks and other forms of securities are regarded by the courts as property of the estate."); *In re Northshore Mainland*, 537 B.R. 192, 200-01 (Bankr. D. Del. 2015) (recognizing trademarks registered in the US as

---

[1] *See* May 15, 2024 Form 20-F at F-11, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001398453/000110465924061570/xin-20231231x20f.htm. The Court can take judicial notice of these publicly filed documents. *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("Courts in this District routinely take judicial notice . . . of public filings.") (taking judicial notice of publicly available court filings and SEC filings); *see also In re Kozuch*, 2021 WL 5893994, at *3 n.7 (Bankr. S.D.N.Y. Dec. 13, 2021).

[2] The Debtor publicly filed this Deposit Agreement as an exhibit to its SEC filings. The Agreement is available at https://www.sec.gov/Archives/edgar/data/1398453/000119312509200085/dex25.htm.

3

property under section 109); *In re Octaviar Administration Pty Ltd*, 511 B.R. 361, 369-72 (Bankr. S.D.N.Y. 2014) ("It is well established that claims and causes of action, though intangible, constitute 'property' . . . the situs of intangibles depends upon a 'common sense appraisal of the requirements of justice and convenience' in the particular circumstance at issue."). As the depositary, JP Morgan is also required to maintain transfer records for the Debtor. These records also constitute property of the Debtor in the United States. *See*, *e.g.*, *In re Paper I Partners, L.P.*, 283 B.R. 661, 671 (Bankr. S.D.N.Y. 2002) (books and records in NY constitute property under section 109).

7. Furthermore, the Debtor is party to a loan facility agreement with one of its American subsidiaries, XIN Development Group International Inc. ("XIN Development"), a Delaware corporation. Pursuant to that agreement, the Debtor provided a loan facility to XIN Development for the period from July 1, 2013, through January 18, 2018, amounting to $50,000,000 at 17.5% per annum. As of December 31, 2023, the date of the Debtor's most recent annual report, the Debtor was due $116,656,089, including accrued interest of $67,554,210, under this loan facility. The more than $116,656,089 due from XIN Development, and the Debtor's contractual right to payment under the agreement, are property of the Debtor located in the state of Delaware. Delaware is the situs of these contract rights, as the assets that would be used to satisfy the debt are located where XIN Development is. *See*, *e.g.*, *In re Berau Cap. Res. PTE Ltd.*, 540 B.R. 80, 83-84 (Bankr. S.D.N.Y. 2015) ("A debtor's contract rights are intangible property of the debtor . . . It has long been recognized under New York law that intangible property rights, such those arising from contracts, may have more than one situs," including "the domicile or place of business of the [contract] debtor" or "any place where the [contract] debtor

4

can be found") (citation omitted); *In re World of English, N.V.*, 16 B.R. 817, 819 (Bankr. N.D. Ga. 1982) ("the situs of an account receivable is the location of the account debtor").

8.  Upon information and belief, the Debtor has a place of business in the United States.

9.  According to its May 15, 2024 Form 20-F, the Debtor leases 282 square meters of office space in New York. The Debtor employs at least 6 people in the United States. A review of the Debtor's LinkedIn profiles reveals that at least one of these employees works in New York. Moreover, pursuant to the Indenture, the Debtor appoints an authorized agent for service of process in New York, and numerous acts required under the Indenture must be performed in New York City. These facts establish a place of business in the United States. *See In re Zais Inv. Grade Ltd. VII*, 455 B.R. 839, 844-45 (Bankr. D.N.J. 2011) ("A principal place of business is not required to satisfy Section 109(a)'s requirement, rather it is merely 'a' place of business. Further, '[a] person has a place of business in the United States if such person conducts business in the United States or business is conducted in the United States on the person's behalf.'") (citations omitted); *In re Petition of Brierley*, 145 B.R. 151, 161-62 (Bankr. S.D.N.Y.1992) (holding that English corporation had a place of business in the United States when the corporation's accountant, who was employed as an independent contractor, performed accounting functions from Arthur Andersen's offices in New York) (citing *In re Carnera*, 6 F. Supp. 267, 269 (S.D.N.Y.1933). All books and records held in this office space are property of the Debtor in the United States. *Paper I Partners, L.P.*, 283 B.R. at 671.

10. Finally, venue is proper in this District. Section 1408 of title 28 of the United States Code provides that a case under title 11 may be commenced in the district court for the district—

5

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day-period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

11. As set forth above, the Debtor's office and assets within the United States are located in this District. *Supra* ¶¶ 6, 9.

12. Accordingly, the Court has jurisdiction over the Bankruptcy Case, the Debtor is eligible for relief under chapter 11 of the Bankruptcy Code, and venue of these proceedings in this District is proper.

## ARGUMENT

13. For the reasons set forth below, the Debtor's default on the principal and interest payments due to the holders of the Notes, together with the circumstances under which such defaults occurred, entitle the Petitioning Creditors to an order for relief against the Debtor under section 303 of the Bankruptcy Code.

**A. The Petitioning Creditors Are Eligible Under Section 303(b) of the Bankruptcy Code to File the Involuntary Petition**

14. Section 303(b) of the Bankruptcy Code provides that "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . . by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such holder, if such noncontingent,

6

undisputed claims aggregate at least $21,050 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. § 303(b).

15. The Petitioning Creditors are holders of claims against the Debtor on account of the Notes that are not contingent as to liability or amount, nor the subject of a bona fide dispute as to liability or amount. Those claims include, without limitation, payments of accrued interest that are overdue and unpaid principal which came due following the Maturity Date.

16. As set forth in the Involuntary Petition and Declaration of Zhang Jun, and the documents attached thereto, Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP holds a claim against the Debtor in the aggregate amount of at least $58,500,000 (plus applicable interest, fees, and other charges) with regard to the Notes issued by the Debtor pursuant to the Indenture. Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP's holdings of the Notes were acquired on or around February 9, 2021. Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP acquired its claims on the open market for investment purposes and not for the purpose of commencing this Chapter 11 Case.

17. As set forth in the Involuntary Petition and Declaration of Song Yan, and the documents attached thereto, Mars Partner Limited holds a claim against the Debtor in the aggregate amount of at least $7,000,000 (plus applicable interest, fees, and other charges) with regard to the Notes issued by the Debtor pursuant to the Indenture. Mars Partner Limited's holdings of the Notes were acquired on or about February 23, 2024. Mars Partner Limited acquired its claims on the open market for investment purposes and not for the purpose of commencing this Chapter 11 Case.

18. As set forth in the Involuntary Petition and Declaration of Zhu Yu Xiang, and the documents attached thereto, Star Freight & Trading Co., Ltd. holds a claim against the Debtor in

7

the aggregate amount of at least $300,000 (plus applicable interest, fees, and other charges) with regard to the Notes issued by the Debtor pursuant to the Indenture. Star Freight & Trading Co., Ltd.'s holdings of the Notes were acquired on or about April 19, 2024. Star Freight & Trading Co., Ltd. acquired its claims on the open market for investment purposes and not for the purpose of commencing this Chapter 11 Case.

19.　Accordingly, the Petitioning Creditors hold claims against the Debtor based upon their holdings of the Notes, and such claims aggregate at least $21,050 more than the value of any lien on property of the Debtor securing such claims.

**B. The Petitioning Creditors Are Authorized to File the Involuntary Petition**

20.　There is no provision in the Indenture that bars the Petitioning Creditors from filing this Involuntary Petition. The Petitioning Creditors are the underlying beneficial holders of the Notes. The Notes are held through the Euroclear System, operated by Euroclear Bank SA/NV ("Euroclear"). As set forth in the Involuntary Petition and Supporting Declarations, and the documents attached thereto, in accordance with the Operating Procedures of the Euroclear System, Euroclear has authorized each of the Petitioning Creditors to bring this Involuntary Petition against the Debtor.[3] Euroclear's authorization broadly applies to the extent that Euroclear, its nominee, its depository or its depository's nominee is the registered holder of the Notes. Citibank Europe plc ("Citibank"), as the common depositary for Euroclear, has "confirm[ed] that Citibank has no role in the administration of the Euroclear Operating Procedures" and therefore has not objected to Euroclear's authorizations.[4] Accordingly, the

---

[3] The relevant Euroclear authorizations for each Petitioning Creditor are attached to the Declarations of Zhang Jun (Involuntary Petition, Ex. B), Song Yan (Involuntary Petition, Ex. D), and Zhu Yu Xiang (Involuntary Petition, Ex. F) (collectively, the "Supporting Declarations").

[4] Citibank's confirmation is attached to each of the Supporting Declarations.

8

Petitioning Creditors as beneficial holders of the Notes are authorized to file the Involuntary Petition.

### C. The Debtor Is Generally not Paying Debts as They Become Due

21. In addition to the Debtor's failure to pay approximately $65.8 million in principal and interest due and owing to the Noteholders, the Debtor is generally not paying debts as they become due. Publicly available documents reveal a pattern of liquidity issues and payment defaults over the last several years.

22. For example, the Debtor formerly retained Baker & McKenzie LLP to prepare its required SEC filings. On July 2, 2024, Baker & McKenzie LLP sued the Debtor in the Supreme Court of New York County for $334,082.13 due in unpaid fees for services rendered from 2019 through 2021. According to the complaint, the Debtor has made no payments in 3 years and "$334,082.13 remains unpaid at this time." *Baker & McKenzie LLP v. Xinyuan Real Estate Co., Ltd.*, Index No. 653420/2024 (Sup. Ct. New York County 2024), Docket No. 1 ¶ 12. The Debtor has not yet responded to this lawsuit.

23. In the years 2021 through 2024, the Debtor failed to make payments on multiple issues of outstanding notes. According to its May 15, 2024 Form 20-F, the Debtor has the following outstanding notes: June 2022 Senior Secured Notes due 2022; September 2023 Senior Secured Notes due 2023; January 2024 Senior Secured Notes due 2023; and September 2027 Senior Secured Notes due 2027. As of December 31, 2023, the Debtor did not make payments in full for the June 2022 Senior Secured Notes, causing multiple events of default. While some eligible holders of the June 2022 Senior Secured Notes exchanged their notes for the September 2027 Senior Secured Notes, the carrying amount of senior notes still in default was $393.0 million.

9

24. The Debtor has also breached certain covenants relating to bank and other borrowings of $614.0 million as of December 31, 2023. Considering the company's ratio of current liabilities ($2.5 billion) to current assets ($173 million), this result is no surprise. These numbers have grown significantly worse in recent years. In 2021, the Debtor's short-term bank loans and other debt, and current portion of long-term bank loans and other debt amounted to $1,566.3 million while its cash and cash equivalents amounted to $426 million.

25. As a parent company, the Debtor's ability to service its indebtedness depends significantly upon dividends that the Debtor receives from its operating subsidiaries. During the three fiscal years ended December 31, 2021, 2022, and 2023, subsidiaries of the Debtor transferred cash in a total amount of $292.4 million, $ 6.3 million, $5.0 million, respectively, to the Debtor for working capital purposes. During those three fiscal years, other than the cash transfers described hereto, there were no other transfers of assets or cash dividends among the Debtor and its subsidiaries. In other words, the Debtor's cash flow to service its debt has decreased substantially over the past few years, culminating in the Debtor's failure to pay its debts as they become due.

26. Accordingly, on December 31, 2023, the Debtor's auditor determined that the Debtor's "ability to continue as a going concern is a critical matter." May 15, 2024 Form 20-F at F-4. The Debtor's financial performance has gotten significantly worse since the end of 2023, as the Debor's revenue has decreased by an additional 59.9% for the first half of 2024.[5]

## CONCLUSION

27. Based on the above, and such other evidence as may be adduced at trial, the Petitioning Creditors respectfully request that the Court enter orders for relief against the Debtor

---

[5] *See* Press Release Announcing First Half 2024 Financial Results, available at
https://www.sec.gov/Archives/edgar/data/1398453/000110465924111523/tm2426779d1_ex99-1.htm.

pursuant to section 303 of the Bankruptcy Code and grant such other relief as may be just and proper.

Dated:  April 14, 2025
      New York, New York

/s/ *Paul R. DeFilippo*
**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Ryan A. Kane, Esq.
500 Fifth Avenue
New York, NY 10110
Telephone:  (212) 382-3300
Facsimile:  (973) 741-2398
Email:  pdefilippo@wmd-law.com
        jlawlor@wmd-law.com
        rkane@wmd-law.com

*Counsel to Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Star Freight & Trading Co., Limited, and Mars Partner Limited.*