**Presentment Date and Time: June 16, 2025 at 12:00 p.m. (prevailing Eastern time)**
**Objections Deadline: June 13, 2025 at 5:00 p.m. (prevailing Eastern time)**

**WINDELS MARX LANE & MITTENDORF, LLP**
*Attorneys for Xinyuan Real Estate Co., Ltd., Alleged Debtor*
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215
Alan Nisselson (anisselson@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
Eloy A. Peral (eperal@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | |
|---|---|
| XINYUAN REAL ESTATE CO., LTD., | Chapter 11 |
| | Case No. 25-10745-pb |
| Alleged Debtor. | |

**MOTION OF ALLEGED DEBTOR FOR AN
ORDER EXTENDING ITS TIME TO ANSWER
OR MOVE AGAINST THE INVOLUNTARY PETITION**

**TO THE HONORABLE PHILIP BENTLEY,**
**UNITED STATES BANKRUPTCY JUDGE:**

Xinyuan Real Estate Co., Ltd. ("***Xinyuan***" or the "***Alleged Debtor***"), the alleged debtor, by and through its attorneys, Windels Marx Lane & Mittendorf, LLP ("***Windels Marx***"), respectfully requests through this motion (the "***Motion***") and the supporting affidavit of Sheng Zhang, the Secretary of the Board for Xinyuan attached as **Exhibit "A"** (the "***Zhang Affidavit***"), for entry of an Order extending the time to file an answer or response to the involuntary petition for an additional 30 days from the date of this Motion.

### I. Preliminary Statement

1. For the reasons stated below, an extension of Xinyuan's time to answer or respond to the involuntary petition is warranted. Xinyuan has made substantial progress in the Cayman Islands, the place of its incorporation, towards obtaining a signed Restructuring Support Agreement from

holders of a majority of the Scheme Notes (as defined hereunder) by obtaining support from approximately 25% of such holders as of the date of this Motion while expecting to obtain restructuring support from an additional 30% of such holders in the near term. Xinyuan's multi-year, out-of-court restructuring efforts have been disrupted by the petitioning creditors abruptly filing the involuntary petition in an attempt to gain an upper-hand in negotiations with Xinyuan.[1] Xinyuan is optimistic that a restructuring plan can be substantially completed and implemented shortly. For these reasons, Xinyuan respectfully requests that the Court grant an extension of time to continue its restructuring in the Cayman Islands and outside a chapter 11 process forced upon it by the petitioning creditors.

2.      On May 7, 2025 and May 15, 2025, the Court "So Ordered" two stipulations between Xinyuan and the Petitioning Creditors extending Xinyuan's time to answer or respond to the involuntary petition, first for ten days from May 6 to May 16, 2025 (Doc. 9), and second for fourteen days from May 16, 2025 through May 30, 2025. As it turned out, that was insufficient time for Xinyuan to respond to the complaint, if necessary. The Petitioning Creditors have not agreed to a further 30-day extension through June 30, 2025. Accordingly, Xinyuan requests the court to extend its time for an additional 30 days from the date of this Motion to allow it to restructure its affairs in the Cayman Islands.

---

[1] Xinyuan notes that filing an involuntary petition as a way to gain a tactical advantage against the alleged debtor and its other creditors is grounds to dismiss the involuntary petition. *See In re Murray*, 900 F.3d 53, 60-63 (2d Cir. 2018) (dismissing involuntary petition for cause under § 707(a); *In re PTGi Int'l Carrier Servs., Inc.*, 668 B.R. 517, 521-22 (Bankr. D. Del. 2025) ("This Court finds that [the petitioning creditors] filed the involuntary petition in bad faith because [the petitioning creditors] [are] attempting to use it as a litigation tactic, to obtain a disproportionate advantage for themselves, and as a substitute for customary debt-collection procedures, and because the filing had suspicious timing.").

## II.     Jurisdiction; Venue; Statutory Bases

3.     This Court has jurisdiction of this Motion under 28 U.S.C. §§ 157 and 1334, the *Standing Order of Referral of Cases to Bankruptcy Judges* of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.), and the *Amended Standing Order of Reference* of the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b). The statutory bases for the relief sought herein are Rules 1011 and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## III.     Procedural Background and Facts

4.     Xinyuan is a publicly traded (listed on the New York Stock Exchange) foreign entity incorporated in the Cayman Islands on March 26, 2007 as an exempt company, and has no material operations of its own.[2] It is a holding company that conducts its real estate development business through subsidiaries (together with Xinyuan, the "***Company***") primarily through operating subsidiaries in the Peoples' Republic of China ("***China***").[3] Xinyuan's common shares are listed on the New York Stock Exchange in the form of American depository shares "***ADSs***").[4] Xinyuan's principal executive offices are located in Beijing, China and its registered address is located in Grand Cayman, Cayman Islands.[5] Most of Xinyuan's assets are located in the Peoples' Republic of China, and many of its directors and senior executive officers reside within China and some or all of the assets of those persons are located outside of the United States.

---

[2] *See* SEC Form 20-F of Xinyuan Real Estate Co., Ltd. for the fiscal year ended December 31, 2024 ("***Form 20-F***"), at 55. A copy of the Form 20-F is attached to the Zhang Affidavit as **Exhibit 1**.

[3] *Id*.

[4] *Id*. at 2.

[5] *Id*. at 55.

3

5.  The Company's business model relies on acquiring unoccupied land in China primarily through auctions of government land and acquisitions of landowning entities.[6] Revenues derive primarily from the sale of residential units.[7] In 2022, 2023, and 2024, the Company's revenue was $950.0 million, $805.0 million and 514.7 million, respectively.[8]

6.  According to its most recent Form 20-F, as of December 31, 2024, the Company had 109 projects, 104 of which were located in 20 different geographic markets in China.[9] The Company has made investments outside of China, including in Malaysia, the United Kingdom, and New York.[10]

7.  As of December 31, 2024, the Company had 16 projects under construction (all in China), initiated seven projects under planning (all but one in China), and completed 84 projects (all but two in China) comprising a total of 133,323 units since the inception of the Company, more than 98% of which have been sold.[11]

***The January 2024 Senior Secured Notes and the Petitioning Creditors' Claims***

8.  On January 25, 2021, the Company issued a collective aggregate principal amount of $270,000,000 of senior secured notes bearing interest at 14.0% per annum and maturing on January 25, 2024 (the "***January 2024 Senior Secured Notes***").[12] The Company had not made

---

[6] *Id*. at 97.

[7] *Id*. at 97.

[8] *Id.* at 55.

[9] *Id*. at 57.

[10] *Id*. at 15 and 56.

[11] *Id.* at 55.

[12] *Id*. at 126.

4

interest payments for the January 2024 Senior Secured Notes since July 25, 2022.[13] The Company has been negotiating with holders of the January 2024 Senior Secured Notes, including the Petitioning Creditors, to restructure the January 2024 Senior Secured Notes among other liabilities of the Company as further described below. On August 18, 2023, certain holders of the January 2024 Senior Secured Notes in the aggregate principal amount of $86.7 million exchanged their notes for the September 2027 Senior Secured Notes.[14] The Company's obligations under the indenture (the "2024 Indenture") governing the January 2024 Senior Secured Notes are guaranteed by the Alleged Debtor and certain wholly-owned subsidiaries and are secured by a pledge of the capital stock of the Alleged Debtor and certain wholly-owned subsidiaries.[15]

9. Based on the Petitioning Creditors' statement in support of the Involuntary Petition, the Petitioning Creditors contend that they hold claims in the aggregate amount of at least $65,800,000 arising from the January 2024 Senior Secured Notes and that they acquired their notes on February 9, 2021, February 23, 2024, and April 19, 2024.[16]

*Restructuring Efforts and Negotiations*[17]

10. Since 2022 the Company has proactively attempted to resolve debts both from domestic and foreign institutions and have engaged Alvarez & Marsal Corporate Finance Limited to advise on certain debt matters.[18] As of December 31, 2023, the Company has accumulatively

---

[13] *Id*. at 128.

[14] *Id.* at 126, 128.

[15] *Id*. at 126.

[16] *See Statement of Petitioning Creditors in Support of Involuntary Chapter 11 Petition Against Xinyuan Real Estate Co., Ltd*., ECF No. 1, ¶¶ 15-17.

[17] The background and statements below regarding the Alleged Debtor's restructuring are found in the Form 6-K dated May 27, 2025, a copy of which is attached to the Zhang Affidavit as **Exhibit 2**.

[18] *Id*. at 14.

5

completed debt restructurings amounting to $880.6 million, including the rollover of the onshore corporate bonds issued by the Alleged Debtor, and an exchange offer of the January 2024 Senior Secured Notes completed in August 2023.[19]

11.     Currently, the Alleged Debtor is pursuing a debt restructuring that will be implemented through a scheme of arrangement to be filed pursuant to section 86 of the Cayman Islands Companies Act (2025 Revision), which would restructure the January 2024 Senior Secured Notes, including those held by Petitioning Creditors, among other series of notes (collectively, the "***Scheme Notes***").[20] The total amount due under the Scheme Notes that would be subject to a scheme of arrangement is approximately $601,184,320. The Petitioning Creditors appear to hold approximately 10% of the debt under the Scheme Notes based on their contention that they hold $65,800,000 of the debt under the January 2024 Senior Secured Notes.

12.     The proposed restructuring will be comprised of an offshore debt restructuring by way of a scheme of arrangement under the laws of the Cayman Islands. The Alleged Debtor expects to file a scheme of arrangement with the Cayman court sometime in June 2025. The scheme of arrangement will restructure the Alleged Debtor's debt, enhance financial certainty and transparency, unlock long-term value for stakeholders, and strategically realign its business structure.

13.     Holders of approximately 25% of the aggregate principal amount of the Scheme Notes have signed a Restructuring Support Agreement (the "***RSA***"), which will form the basis for a scheme of arrangement. The Company expects to obtain an additional 30% very soon and

---

[19] *Id*. at 14.

[20] These also include 14.5% senior notes due 2023, 14.2% senior notes due 2023, and the 3.0% senior notes due 2027 which were a product of the exchange offer for the January 2024 Senior Secured Notes completed in August 2023.

eventually the 75% threshold required for approval of a scheme of arrangement in the Cayman Islands.

14. On April 14, 2025 (the "*Petition Date*"), Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Mars Partner Limited, and Star Freight & Trading Co., Limited (the "*Petitioning Creditors*") filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code against Xinyuan (Doc. 1).

15. The Petitioning Creditors filed the Involuntary Petition while the Company was in direct negotiations with them and other bondholders regarding a RSA. The Alleged Debtor's stock price immediately dropped by over 37%, falling from $2.60 to a closing price of $1.62 on April 15 (the day after the Petition Date). As a result of this significant decline, the NYSE halted trading of the Alleged Debtor's stock for three days. Under NYSE's continuing listing standards, a company is required to maintain a minimum market capitalization of USD $15 million. If another stock price decline is caused by this proceeding, the Company risks failing NYSEs continuing listing requirement and can be in imminent risk of being delisted. Once delisted, the Company will suffer irreparable harm.

16. On April 14, 2025, the Clerk of the Bankruptcy Court issued a Summons to Debtor in Involuntary Case (Doc. 2).

17. On April 17, 2025, the Petitioning Creditors filed an affidavit of service, asserting that on April 15, 2025, the Summons and Involuntary Petition had been served upon Xinyuan c/o CT Corporation System. Bankruptcy Rule 1011(b) requires a responsive pleading or motion in an involuntary case to be filed within 21 days after service of the summons. CT Corporation System, however, is not Xinyuan's authorized agent for service of process. Notwithstanding that as of this date, Xinyuan has not been properly served with the Summons and involuntary petition,

Xinyuan stipulated to acknowledge that service.

### IV.    Argument and Authorities

18.    The Petitioning Creditors' refusal to agree to extend the time to respond for a mere additional 30 days has put Xinyuan in an untenable position.  The Petitioning Creditors' position has made this Motion necessary based upon that refusal.  Xinyuan believes that consummation of the Cayman Islands restructuring will resolve this involuntary bankruptcy case.

19.    Bankruptcy Rule 9006 permits a court to extend this time on request made before the expiration of the period originally prescribed.  Fed.R.Bankr.P. 9006; see also *In re Shapiro*, 128 B.R. 328, 331 (Bankr. E.D.N.Y. 1991).  This Motion requesting more time has been filed before expiration of the May 30 deadline.  In light of the circumstances relating to this case as described in this Motion and the Zhang Affidavit, Xinyuan respectfully submits that cause exists to extend the time for filing an answer or response.  Xinyuan is seeking to avoid burdening this Court with contested involuntary proceedings that may be unnecessary if Xinyuan is granted an extension.

20.    Following are the bases for granting the requested extension.  First, Xinyuan believes that the Petitioning Creditors, who were aware of the Company's restructuring efforts before filing the involuntary petition, did so in order to gain a bargaining advantage for themselves.  It has been held that an involuntary chapter 11 is appropriate where the petition "seeks to achieve objectives that benefit all creditors is consistent with the Bankruptcy Code's goal to 'secure equal distribution among creditors.'" *Taberna Preferred Funding*, 594 B.R. at 601 (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006)).  Under chapter 11, the Code's objective is to "preserv[e] going concerns and maximiz[e] property available to satisfy creditors ... and [to]achieve fundamental fairness and justice." *Id*. (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 157 (3d Cir. 2012)).  A bankruptcy petition therefore "must seek to create or preserve some value that would otherwise be lost—not merely distributed

8

to different a stakeholder—outside of bankruptcy." *Id.* (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 129 (3d Cir. 2004)). Clearly, the Petitioning Creditors have not met this standard.

21. Second, these involuntary proceedings against Xinyuan have negatively affected its stock price and damaged its shareholders and the Company, based on the decline of its stock price and the cessation of trading when the involuntary petition was filed, as described above. Without the requested extension of time, the continued bankruptcy case could cause Xinyuan's stock to be delisted and cause the Alleged Debtor, its creditors, and shareholders irreparable harm.

22. Third, Xinyuan will need another 30 days to be in a better position to file a petition for a scheme of arrangement in the Cayman Islands, which Xinyuan expects to file in June 2025, and commence other proceedings as appropriate, including a possible ancillary Chapter 15 case in the U.S. Holders of approximately 25% of the aggregate principal amount of the Scheme Notes have signed a RSA and Xinyuan is intensely engaged in negotiations with another 30% of bondholders. An approved scheme of arrangement, coupled with a chapter 15 proceeding seeking recognition in the U.S., will offer a vastly more efficient, economical, and expedited means to resolve Xinyuan's debts, including the Petitioning Creditors' claims, that better serve the interest of creditors. Continuing these bankruptcy proceedings would disrupt Xinyuan's out-of-court restructuring efforts and potentially require it and its creditors to start from scratch, as the proposed restructuring does not contemplate chapter 11 proceedings.

23. Moreover, nearly all of the Company's assets are located in China and its operations are heavily concentrated there. Of 109 real estate projects the Company has undertaken since its inception, 106 are outside the U.S. For this and other reasons, including Xinyuan's incorporation in the Cayman Islands and the Company's scant presence in the U.S., this Court is not the most

9

effective forum for the Company to commence a plenary insolvency proceeding. While bankruptcy courts may generally exercise extraterritorial jurisdiction over a debtor's assets and creditors located outside the U.S., the existence of jurisdiction does not guarantee that foreign creditors will comply with orders issued by this Court and compelling compliance in a foreign jurisdiction presents a host of legal and practical problems. In addition, Xinyuan is a holding company with no operations. A chapter 11 proceeding may not offer a complete resolution of the debts and disputes involving the Company.

24.    Lastly, the Petitioning Creditors collectively own a modest fraction of the Scheme Notes. These minority insurgent creditors – whose conduct makes clear they are willing to harm other creditors to gain an advantage in negotiations – should not dictate the forum and manner in which Xinyuan reorganizes. The approximate 25% of holders of Scheme Notes that have already agreed to the RSA have assented to Xinyuan's selection of the Cayman Islands as their main proceeding. Xinyuan expects to obtain an additional 30% support from the holders of the Scheme Notes soon and is working to meet the 75% threshold. The extension of time here will give Xinyuan room to find a resolution that does not empower the Petitioning Creditors to dictate the terms and location of the restructuring.

### VI.    Reservation of Rights

25.    By making this motion, Xinyuan hopes to not burden this Court with contested involuntary petition proceedings that may be avoidable. If the matter is not resolved, Xinyuan intends to file a motion to dismiss the involuntary petition on various grounds, including under Bankruptcy Code § 1112(b) for cause, on abstention principles pursuant to Bankruptcy Code § 305(a), and *forum non conveniens* grounds. Indeed, Xinyuan believes the Bankruptcy Court is not the best nor most appropriate forum because of the concentration of the Company's assets and operations outside of the U.S. Xinyuan hopes this motion to extend, if granted, will be sufficient to allow it to file a scheme of

arrangement in the Cayman Islands, where the alternative restructuring is under way, and is the place of its incorporation.

26. Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against Xinyuan or a waiver of Xinyuan's rights and defenses to dispute any claim.

27. In addition, in the event the Court denies this motion, Xinyuan reserves the right to request that the Court grant it an additional week to file an answer or response to the involuntary petition. Furthermore, the Alleged Debtor reserves the right to seek discovery against the Petitioning Creditors and any other person as appropriate and in particular, should the Court determine it cannot decide the Motion on the current record.

### VII. Notice And No Prior Request

28. Xinyuan has given notice of this Motion to (i) the U.S. Trustee's Office, (ii) attorneys for the Petitioning Creditors, and (iii) all entities who filed a notice of appearance and demand for notice by the date of this Motion. The Trustee respectfully submits that such notice constitutes good and sufficient notice and that no other notice is necessary or required.

29. No previous motion for the relief requested herein has been made to this or any other court.

**WHEREFORE,** Xinyuan respectfully requests entry of an Order substantially in the form attached as **Exhibit "B"** extending its time to answer or respond to the involuntary petition for an additional 30 days from the date of this Motion, and granting such other and further relief as is just.

11

Dated: New York, New York　　　Respectfully submitted,
   May 30, 2025

           WINDELS MARX LANE & MITTENDORF, LLP
           *Attorneys for Xinyuan Real Estate Co., Ltd.,*
           *Alleged Debtor*

           By: */s/ Leslie S. Barr*
              Alan Nisselson (anisselson@windelsmarx.com)
              Leslie S. Barr (lbarr@windelsmarx.com)
              Eloy A. Peral (eperal@windelsmarx.com)
              156 West 56th Street
              New York, New York 10019
              Tel. (212) 237-1000 / Fax. (212) 262-1215

# EXHIBITS

Exhibit A            Affidavit of Sheng Zhang

Exhibit B            Proposed Order