WOLLMUTH MAHER & DEUTSCH LLP
Paul R. DeFilippo
James N. Lawlor
Ryan A. Kane
Nicholas A. Servider
500 Fifth Avenue, 12th Floor
New York, New York 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
Email: pdefilippo@wmd-law.com
       jlawlor@wmd-law.com
       rkane@wmd-law.com
       nservider@wmd-law.com

*Counsel for Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Star Freight & Trading Co., Limited, and Mars Partner Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| XINYUAN REAL ESTATE CO., LTD., | Case No.: 25-10745-pb |
| Debtor. | |

**THE PETITIONING CREDITORS' OBJECTION TO THE
MOTION OF THE ALLEGED DEBTOR FOR AN ORDER EXTENDING ITS
TIME TO ANSWER OR MOVE AGAINST THE INVOLUNTARY PETITION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

ARGUMENT ................................................................................................................................4

    A.  The Alleged Debtor Has Not Established "Cause" to Further Extend Its Time to Respond to the Petition ....................................................................................................4

    B.  The RSA and Scheme of Arrangement Will Not Moot the Petition.................................10

    C.  The Alleged Debtor's Other Contentions Lack Merit .......................................................12

    CONCLUSION................................................................................................................13

# TABLE OF AUTHORITES

**Cases**                                                                                                                                   **Page(s)**

*In re Aerovias Nacionales de Colombia S.A.*,
   303 B.R. 1 (Bankr. S.D.N.Y. 2003) ............................................................................... 11

*In re Albers*,
   71 B.R. 39 (Bankr. N.D. Oh. 1987) ............................................................................ 4, 5-6

*In re Globo Comunicacoes e Participacoes S.A.*,
   317 B.R. 235 (S.D.N.Y. 2004) ......................................................................................... 11

*In re Key*,
   209 B.R. 737 (B.A.P. 10th Cir. 1997) ................................................................................ 4

*In re MF Global Holdings Ltd.*,
   561 B.R. 608 (Bankr. S.D.N.Y. 2016) .............................................................................. 10

*In re Miles*,
   453 B.R. 449 (Bankr. N.D. Ga. 2011) ................................................................................ 5

*In re Rebeor*,
   93 B.R. 16 (Bankr. N.D.N.Y. 1988) ................................................................................... 4

*In re Rohalmin*,
   598 B.R. 900 (Bankr. S.D. Fla. 2019) .............................................................................. 10

*In re Wooten*,
   620 B.R. 351 (Bankr. D.N.M. 2020) .................................................................................. 5

**Statutes**

11 U.S.C. § 305 .................................................................................................................. 10-11, 12

**Rules**

Fed. R. Bankr. P. 9006 ................................................................................................................. 5

Fed. R. Bankr. P. 1011 ............................................................................................................. 4, 6

Fed. R. Bankr. P. 1013 ................................................................................................................. 4

Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Star Freight & Trading Co., Limited, and Mars Partner Limited (together, the "Petitioning Creditors")[1] respectfully submit this objection to the Motion of Xinyuan Real Estate Co., Ltd. (the "Alleged Debtor") for an Order Extending Its Time to Answer or Move Against the Involuntary Petition [Dkt. 15] (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

1.  The Alleged Debtor is an insolvent company that has not and cannot pay its debts. It has been in default on the Petitioning Creditors' bond debt for over two years during which time it has been unable to make any meaningful progress toward a resolution. For this reason, the Petitioning Creditors have brought the Petition, and not for any improper motive. The Petitioning Creditors previously agreed to extend the time for the Alleged Debtor to respond to the Petition twice for a total of 46 days. The Alleged Debtor failed to respond on the due date, and it instead has asked the Court to allow it still more time to respond to the Petition. The Alleged Debtor provides no legitimate justification for failing to respond to the Petition on the due date and for seeking a further extension. The purported Cayman scheme of arrangement is a pipe dream that lacks any meaningful support from creditors who are not affiliated with the Alleged Debtor, and the Alleged Debtor's assertion that it will garner additional support for its Cayman scheme is, at best, rank speculation. The Petitioning Creditors believe that no Cayman scheme can succeed without their support, for the reasons set forth in the Declaration of Paul Matthew Smith ("Smith Decl.") submitted in support of this objection. Speculation about its chances of success in settling with its creditors is part of the Alleged Debtor's practice of making misleading statements concerning purported deals with its creditors in this action, including its previous misleading Form

---

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Petition.

6-K representing that it reached a settlement with Petitioning Creditors. Declaration of Paul R. DeFilippo ("DeFilippo Decl."), Ex. 1 ("As of April 21, 2025, the Company has reached settlement agreement with all of the petitioning creditors . . . in connection with the involuntary petition filed on April 14[.]"). The commencement of a hypothetical Cayman Islands proceeding, which has virtually zero chance of success, is not sufficient cause to delay the Alleged Debtor's response to the Petition. The Motion should be denied, and the Alleged Debtor should be required to immediately respond to the Petition, or the Court should enter an order for relief on default.

## BACKGROUND[2]

2.      The Alleged Debtor is a NYSE-listed holding company that operates through its subsidiaries to invest in and develop real estate properties across the globe, including in New York.

3.      On or about January 25, 2021, the Alleged Debtor, as the issuer, executed the indenture with Citicorp International Limited, as trustee (the "Indenture"). DeFilippo Decl., Ex. 2. Under the Indenture, the Alleged Debtor issued notes in an aggregate principal amount of $170,000,000 (the "January 2024 Senior Secured Notes"). *Id.*; DeFilippo Decl., Ex. 3; DeFilippo Decl., Ex 4.[3] The Indenture required the Alleged Debtor to repay the principal and any unpaid and accrued interest on the final maturity date of January 25, 2024 (the "Maturity Date"). DeFilippo Decl., Ex. 2 § 1.01 (definition of "Final Maturity Date"). The Debtor has not paid interest since 2022 and failed to make payment of all amounts due on the Maturity Date.

---

[2] The relevant facts are set forth more fully in the Petition, supporting Declarations, and the exhibits attached thereto. The Motion contains many allegations irrelevant to whether the Alleged Debtor has met its burden to show cause for an extension. By not responding to all the irrelevant allegations in the Motion, the Petitioning Creditors do not concede the truthfulness of them.

[3] On February 3, 2021, the Alleged Debtor announced an additional issuance of $100,000,000 in notes to be consolidated and form a single class with the January 2024 Senior Secured Notes. DeFilippo Decl., Ex. 5. On August 18, 2023, eligible holders of the January 2024 Senior Secured Notes in the aggregate principal amount of $86.7 million agreed to exchange their notes for additional notes issued by the Alleged Debtor. DeFilippo Decl., Ex. 6 at 128. Accordingly, the outstanding principal balance of the January 2024 Senior Secured Notes is approximately $183.3 million.

2

4. The Petitioning Creditors are holders of claims against the Alleged Debtor on account of the January 2024 Senior Secured Notes in the aggregate amount of at least $65,800,000 (plus applicable interest, fees, and other charges).

5. On April 14, 2025, the Petitioning Creditors filed an involuntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code (the "Code") against the Alleged Debtor (the "Petition") [Dkt 1]. On April 15, 2025, the Clerk of the Bankruptcy Court issued a summons to the Alleged Debtor [Dkt. 2] (the "Summons"). On April 15, 2025, the Petition and Summons were properly served upon the Alleged Debtor [Dkts. 7, 12]. The Alleged Debtor has acknowledged service and "waive[d] any defense related to the propriety of service of process of the Petition and Summons." Dkt. 12 ¶ 3.

6. On May 6, 2025, the Petitioning Creditors agreed to Alleged Debtor's first request to extend its time to respond to the Petition and executed a stipulation to extend the Alleged Debtor's time to respond to the Petition to May 16, 2025, which the Court so ordered on May 7, 2025. [Dkts. 8, 9]. On May 14, the Petitioning Creditors agreed to Alleged Debtors' second request to extend its time to respond to the Petition and executed a second stipulation to extend the Alleged Debtor's time to respond to the Petition to May 30, 2025, which the Court so ordered on May 15, 2025. [Dkts. 10, 11, 12].

7. On May 30, 2025, the Alleged Debtor's due date to respond to the Petition, counsel for the Alleged Debtor appeared in this proceeding and filed the instant Motion, requesting that this Court to once again delay its response to the Petition. The Motion touted the existence of a restructuring support agreement ("RSA"), but at best the RSA is only supported by 25% of noteholders, who Petitioning Creditors believe are affiliated with Alleged Debtor. The Alleged Debtor has failed to respond to Petitioning Creditors' questions with respect to the identity and

3

affiliations of the signatories to the RSA. DeFilippo Decl., Exs. 7, 8.[4] The Alleged Debtor claims, without support, that an additional 50% of noteholders will eventually support the RSA and then Alleged Debtor will file a scheme of arrangement pursuant to section 86 of the Cayman Islands Companies Act. Mot. at ¶¶ 11-13.

## ARGUMENT

8.     For the reasons set forth below, the Alleged Debtor's Motion should be denied and the Alleged Debtor should be ordered to immediately respond to the Petition, or the Court should enter an order for relief on default.

### A. The Alleged Debtor Has Not Established "Cause" to Further Extend Its Time to Respond to the Petition

9.     Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "Rules") requires a debtor to file defenses and objections to an involuntary petition "within 21 days after the summons is served." Fed. R. Bankr. P. 1011(b). Consistent with "the Code's policy to expeditiously resolve involuntary proceedings," Rule 1011 does not provide for any extension of time. *In re Rebeor*, 93 B.R. 16, 22 (Bankr. N.D.N.Y. 1988) ("the plain language of Code § 303(h) embod[ies] the Code's policy to expeditiously resolve involuntary proceedings"); *see also In re Key*, 209 B.R. 737, 739 (B.A.P. 10th Cir. 1997) ("Federal Rule of Bankruptcy Procedure 1013(b) provides that if there is no responsive pleading filed within the limits established by Rule 1011, the court shall enter the order for relief on the next day or as soon thereafter as practicable. This suggests the import of speed in involuntary cases.") (quoting 2 Collier on Bankruptcy ¶ 303.10[3]); *In re Albers*, 71 B.R. 39, 43 (Bankr. N.D. Ohio 1987) (denying motion to extend time to respond to involuntary petition because it "would be contrary to the Court's sense of the best means to

---

[4] The Alleged Debtor did not submit the RSA as an exhibit to the Motion, and has refused to provide Petitioning Creditors an unredacted copy of the RSA or to otherwise identify the holders supporting the RSA.

4

secure the expeditious and economical administration of every case under the Code and the just, speedy and inexpensive determination of every proceeding").

10. Rule 9006(b)(1) provides that the time to act under the Rules may be enlarged when a request to extend is made before the relevant time period expires, but the court may only grant an extension "for cause." Fed. R. Bankr. P. 9006(b)(1). Although "cause" is not defined in the Rules or the Code, courts impose an obligation on the movant to provide sufficient justification for the requested relief. *In re Wooten*, 620 B.R. 351, 357-58 (Bankr. D.N.M. 2020); *see also In re Miles*, 453 B.R. 449, 451 (Bankr. N.D. Ga. 2011) ("The 'cause' must be compelling and the [movant] must show the reasons it was unable to [act] within the time allowed by the Bankruptcy Rules.").

11. The Alleged Debtor has failed to meet its burden to establish sufficient cause to permit a third extension of time. The Petitioning Creditors have established a prima facie case that they hold debt that is not subject to bona fide dispute, that has not been paid when due, and that the Alleged Debtor is insolvent, a conclusion that is amplified by the Alleged Debtor's recently filed financial information. The Alleged Debtor already received two extensions, providing it a total of 46 days to respond to the Petition. The Alleged Debtor offers no reason why it could not have responded to the Petition within those 46 days. There is a palpable inference that the Alleged Debtor in fact has no valid defenses.

12. Courts reject requests by debtors to extend time to respond to petitions because they need more time to present defenses. For example, in *Albers*, the debtor argued that there was good cause to extend its time to respond to the petition because it had valid defenses to the petition. 71 B.R. at 42. The court rejected these arguments, holding that if a defense is not "time consuming," there is no excuse for failure to raise it by time allowed. *Id.* Even a complicated defense "is not

5

cause for the extension of time in [a] matter when it is weighed against the [creditors'] fears that assets are disappearing." *Id.* Furthermore, a motion to extend time "should fail due to the absence of clean hands on the part of the alleged Debtor." *Id.* Accordingly, the court held that because "the [creditors have] pleaded a prima facie case [] the Court does not see fit to exercise its discretion to override the requirements of 1011(b) and § 303(h)." *Id.*

13. Here, the Alleged Debtor does not even attempt to explain why it has been unable to raise its defenses in response to the Petition. The Alleged Debtor does not argue that its defenses are too time consuming or complicated to raise within the allotted time. In fact, Alleged Debtor presents no reason that it could not have responded to the Petition on the due date.

14. Rather, the Alleged Debtor seeks a further extension because it wants to avoid having to address the merits of the Petition entirely. The Alleged Debtor prefers at some unknown point in the future to try to proceed in a different forum that it views as more favorable. Permitting more time for forum shopping, however, does not constitute cause to grant an extension of time to respond to a petition, particularly where, like here, a debtor has not demonstrated it will even be able to proceed in the other jurisdiction.

15. The Alleged Debtor relies on the potential that it may be able to file a scheme of arrangement under Cayman Islands law, a proceeding that requires an application to the Cayman Islands Grand Court by way of petition supported by affidavit, seeking an order to summon a meeting or meetings of the relevant class or classes of creditors or shareholders to vote on the proposed compromise or arrangement. Smith Decl., ¶ 13. The Grand Court will consider whether the proposed classes of creditors or shareholders are properly constituted, such that those with similar legal rights and interests are grouped together, and whether the information that the company proposes to provide to the creditors and shareholders is sufficient to enable them to make

an informed decision. *Id.* ¶¶ 14-15. The overarching requirement for the composition of classes is that a class "*must be confined to those persons whose rights are not so dissimilar as to make it impossible for them to consult together with a view to their common interest.*" *Id.* ¶ 15. Assuming the Grand Court gives its approval, the class or classes of creditors must vote to approve the scheme. The threshold for approval is two-fold: the scheme must be approved by (i) a majority in number of those creditors present and voting, and (ii) creditors representing 75% in value of the creditors or class of creditors present and voting. *Id.* ¶ 19.

16. In invoking the potential of utilizing Cayman insolvency law, the Alleged Debtor claims it has an RSA, but admits that at the moment, just 25% of noteholders support it. The complete RSA has not been provided to the Petitioning Creditors, and Debtor refused to provide an unredacted copy disclosing the creditors supporting the RSA unless Petitioning Creditors consented to an extension of the Alleged Debtor's time to respond to the Petition (i.e., essentially consent to the Motion). *See* DeFilippo Decl., Exs. 7, 8. It may very well be that the Alleged Debtor has manufactured creditor support for the RSA. Upon information and belief, the Alleged Debtor and/or its controlling shareholder owns or controls the undisclosed creditors that allegedly support the RSA. Creditors that are affiliated with the Alleged Debtor have a vested interest in propping up the Alleged Debtor by supporting the RSA and thus do not share a common interest with unaffiliated creditors, such as the Petitioning Creditors. Smith Decl., ¶ 33(d). Therefore, the 25% of noteholders that currently support the RSA are unlikely to be counted towards the 75% approval threshold for any other class of creditors.

17. Further, the Alleged Debtor offers mere speculation that despite failing to date to gain the required support for the RSA, the Alleged Debtor will suddenly obtain the full 75% needed within the next 30 days and then file a scheme of arrangement in the Cayman Islands at some point

7

in the future. Speculation about currently non-existent support for an RSA that might allow it to file a proceeding in a different country is not cause to further extend Alleged Debtor's time to respond to the Petition.

18. In fact, the RSA cannot reach the necessary support threshold without the support of the Petitioning Creditors. Assuming the Alleged Debtor's noteholders are the only creditors to be considered,[5] the Petitioning Creditors own over one-third of the outstanding January 2024 Senior Secured Notes. *Supra* n.3. Each of the Alleged Debtor's note issuances are governed by separate indentures that come with individual rights and obligations. For that reason, the January 2024 Senior Secured Notes should be treated as a separate class for the purposes of approval. As such, no restructuring of that debt issuance can be achieved in the Cayman Islands without the consent of the Petitioning Creditors. Smith Decl., ¶ 33.

19. The RSA, with little to no support from creditors not affiliated with Alleged Debtor, and a plan to pursue a scheme of arrangement that is destined to fail, are not grounds to award the Alleged Debtor more time to respond to the Petition.

20. At least three of the four note issuances that are subject to the hypothetical Cayman scheme, Mot. at ¶ 11 n.20,[6] are U.S. dollar denominated debt under indentures governed by New York law. DeFilippo Decl., Exs. 2, 9, 10.[7] The Alleged Debtor is clearly insolvent and unable to pay its debts as they come due. For example, the Alleged Debtor's most recent financial

---

[5] The Alleged Debtor ignores the requirement under Cayman law that a scheme of arrangement must be approved by each and every class of creditors. Smith Decl., ¶ 33(c). The RSA only addresses Alleged Debtor's noteholders and ignores its other creditors. *Id.*

[6] The 14.2% senior notes due 2023 are U.S. dollar denominated debt, but the indenture does not appear to be publicly available. DeFilippo Decl., Ex. 6 at 128.

[7] The Indenture governing the Petitioning Creditors' notes, among others, also expressly provides for the commencement of enforcement actions in the U.S. DeFilippo Decl., Ex. 2 § 12.07(b).

8

statements[8] establish "the existence of material uncertainty which cast substantial doubt on the [Alleged Debtor]'s ability to continue as a going concern." DeFilippo Decl., Ex. 6 at F-19; *see also id.* F-4 ("We determined that [Alleged Debtor]'s ability to continue as a going concern is a critical matter due to the estimation and uncertainty regarding the [Alleged Debtor]'s available funding and the risk of bias in management's judgement and assumptions in their determination."). The Alleged Debtor has failed to make payments in full for senior notes, the default of which "triggered cross-default of other senior notes issued." *Id.* at F-19. "The carrying amount of senior notes still in default was US$391.9 million as of December 31, 2024." *Id.* "The [Alleged Debtor] also breached certain covenants relating to borrowings of US$409.9 million as of December 31, 2024" and "continues to be in breach of certain covenants and other lenders have not demanded immediate repayment of other borrowings." *Id.* The Alleged Debtor's balance sheet shows that its shareholder deficit has grown to roughly $104 million while its profit and loss statement shows a net loss of over $51 million. *Id.* F-7, F-8. Meanwhile, the Alleged Debtor's cash and cash equivalents declined from approximately $129 million to $94 million. *Id.* F-6. The Alleged Debtor's cash is grossly inadequate to satisfy all of the defaulted debt, and its operations are not producing positive cash to enhance its payment ability. Additionally, Petitioning Creditors have standing to bring the Petition, and the Alleged Debtor is eligible to be a debtor in the U.S. Therefore, the Petitioning Creditors have established a prima facie case that they meet the requirements set forth in Section 303 of the Code and the Alleged Debtor must respond to the Petition. The Motion suggests defenses without articulating their bases, which does not justify a further extension.

---

[8] The Alleged Debtor's most recent financial statements (for the period ending December 31, 2024) were publicly filed with the SEC on April 29, 2025, as referenced in the Affidavit of Sheng Zhang ("Zhang Aff.") filed by Alleged Debtor in support of the Motion. *See* Zhang Aff., Ex. 1; DeFilippo Decl., Ex. 6.

9

21. In sum, the Alleged Debtor has had ample time to respond to the Petition. Instead, it has chosen to pursue an RSA that to date has insufficient creditor support, and likely will never have sufficient creditor support, even in the supposed forum of its choosing. Alleged Debtor has not met its burden to show any justification for granting it an additional extension.

**B. The RSA and Scheme of Arrangement Will Not Moot the Petition**

22. Even if the RSA was executed, and the Alleged Debtor did file a scheme of arrangement in the Cayman Islands, such a proceeding will not moot the Petition.

23. *First*, the scheme of arrangement is not an organic development. The Alleged Debtor is seeking to file the scheme of arrangement in response to the Petition, which has been pending since mid-April. "The first-filed rule holds that when parties have instituted competing or parallel litigation in separate courts, the court initially having jurisdiction should hear the case." *In re Rohalmin*, 598 B.R. 900, 905 (Bankr. S.D. Fla. 2019). "The primary purpose of the [first-filed] rule is to conserve judicial resources and avoid conflicting rulings." *Id.* (alteration in original). Thus, "the party objecting to jurisdiction in the first-filed forum carr[ies] the burden of establishing 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.* The Alleged Debtor has articulated no basis for a departure from this rule, which is applicable in international cases. *See In re MF Global Holdings Ltd.*, 561 B.R. 608, 628 (Bankr. S.D.N.Y. 2016). Further, courts in the Cayman Islands would respect the orders of this Court and will refuse to assist in any scheme of arrangement that is filed purely for tactical reasons Smith Decl., ¶ 34.

24. *Second*, there is no basis for this Court to abstain from ruling on the Petition when there is no foreign proceeding actually pending. Section 305(a) of the Code provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or (2)(A) a petition under section 1515 for recognition of a foreign proceeding has

10

been granted; and (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.

11 U.S.C. § 305(a). The plain language of the statute makes clear that subsection 2 is not relevant unless a foreign proceeding has commenced. *See In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 12 (Bankr. S.D.N.Y. 2003). The suggestion that a foreign proceeding might hypothetically be brought in the future is insufficient to meet the standard for abstention. *Id.* at 12 ("[I]t would be unwarranted . . . to assume that if such a proceeding were filed it would justify suspension or dismissal of the U.S. case. The following factors, not present in the cases relied on by the movants, support Avianca's maintenance of a plenary case in the United States and denial of the motions to the extent they are based on § 305(a)(2)."); *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 254 (S.D.N.Y. 2004) ("It would unduly frustrate [Congress'] objective if a federal bankruptcy court automatically deferred even to a hypothetical prospect that foreign courts may assert exclusive jurisdiction over bankruptcy matters[.]").

25.     *Third*, "the interests of creditors and the debtor would [not] be better served by such dismissal or suspension" in this case. The Alleged Debtor states that because some of the Alleged Debtor's assets are located in China and its operations are concentrated there, this Court is not the most effective forum for this proceeding. Mot. at ¶ 23. The Alleged Debtor's arguments, however, are equally applicable to a proceeding in the Cayman Islands, Alleged Debtor's preferred jurisdiction. While the Alleged Debtor concedes that it "has made investments outside of China, including in Malaysia, the United Kingdom, and New York," Mot. at ¶ 6, the Alleged Debtor does not identify any investments made or assets held by the Alleged Debtor in the Cayman Islands. Nor does the Alleged Debtor directly challenge the ability of the Petitioning Creditors to bring the Petition in the United States. In fact, the Alleged Debtor alludes to a future "ancillary Chapter 15

11

case in the U.S.," Mot. at ¶ 22, which is an implicit concession that there is a need to have a proceeding pending in the United States.

26.     Thus, neither the RSA, lacking sufficient creditor support, nor a hypothetical scheme of arrangement will render the Petition moot.

### C. The Alleged Debtor's Other Contentions Lack Merit

27.     The Alleged Debtor's Motion is replete with allegations that are irrelevant to the Alleged Debtor's instant Motion.[9] For example, the Alleged Debtor apparently "believes," without evidence, that the Petitioning Creditors "were aware of the Company's restructuring efforts before filing the involuntary petition, [and] did so in order to gain a bargaining advantage." Mot. at ¶ 20. Baldly criticizing the Petitioning Creditors' motivations for filing a prima facie valid involuntary petition smacks of desperation, and has nothing to do with whether Alleged Debtor should be granted more time to respond to the Petition; regardless, the accusations lack any evidentiary support.

28.     The Alleged Debtor concedes that it has been in default on the January 2024 Senior Secured Notes since 2022. Mot. at ¶ 8. The Alleged Debtor has also sought to restructure its debt since 2022. *Id.* ¶ 10. Those efforts have not succeeded for over two years and there is no basis to conclude that they will succeed now. Distilled to its essence, the Alleged Debtor asks this Court to effectively suspend proceedings here without making an abstention motion, or any showing that even remotely satisfies the requirements of Section 305. That result does not find support in the law and is contrary to the Code's policy to expeditiously resolve involuntary proceedings. The

---

[9] The Alleged Debtor consistently relies on the assets and operations of the Alleged Debtor's subsidiaries to make its arguments. *See, e.g.*, Mot. at ¶¶ 4-7. However, none of the operating subsidiaries are parties to the Petition, so the emphasis on the assets and operations of those entities is misplaced.

Alleged Debtor is hemorrhaging cash, and its eroding assets should be under judicial supervision in this Court.

## CONCLUSION

29. For the reasons set forth above, the Petitioning Creditors respectfully request that the Court enter an order denying the Motion and either ordering the Alleged Debtor to immediately respond to the Petition, or entering an order for relief on default.

Dated: June 9, 2025
      New York, New York

                                    /s/ *Paul R. DeFilippo*
                                    **WOLLMUTH MAHER & DEUTSCH LLP**
                                    Paul R. DeFilippo
                                    James N. Lawlor
                                    Ryan A. Kane
                                    Nicholas A. Servider
                                    500 Fifth Avenue
                                    New York, NY 10110
                                    Telephone:  (212) 382-3300
                                    Facsimile:  (973) 741-2398
                                    Email:  pdefilippo@wmd-law.com
                                                     jlawlor@wmd-law.com
                                                     rkane@wmd-law.com
                                                     nservider@wmd-law.com

                                  *Counsel to Cithara Global Multi-Strategy SPC*
                                  *- Bosideng Industry Investment Fund SP, Star*
                                  *Freight & Trading Co., Limited, and Mars*
                                  *Partner Limited.*