**Hearing Date and Time: July 15, 2025 at 3:00 p.m. (prevailing eastern time)**

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000
Alan Nisselson (anisselson@windelsmarx.com)
Eloy A. Peral (eperal@windelsmarx.com)

*Attorneys for Xinyuan Real Estate Co., Ltd., Alleged Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | |
|---|---|
| XINYUAN REAL ESTATE CO., LTD., | Chapter 11 |
| Alleged Debtor. | Case No. 25-10745-pb |

**REPLY OF ALLEGED DEBTOR**
**TO OBJECTION BY PETITIONING**
**CREDITORS TO MOTION FOR AN ORDER**
**EXTENDING ALLEGED DEBTOR'S TIME TO**
**ANSWER OR MOVE AGAINST THE INVOLUNTARY PETITION**

Xinyuan Real Estate Co., Ltd. ("***Xinyuan***" or the "***Alleged Debtor***") by and through its attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully submits this reply (the "***Reply***") to the objection ("***Objection***") filed by the Petitioning Creditors[1] to the motion (the "***Motion***") (Doc. 15) of Xinyuan for an extension of time to respond to the involuntary petition. This Reply is supported by the declaration of Sheng Zhang, Secretary of the Board of Xinyuan ("***Zhang Declaration***") submitted with this Reply and his affidavit ("***Zhang Affidavit***") previously filed in support of the Motion, and the declaration ("***Hobden Declaration***") of Ben Hobden a partner of Harney Westwood & Riegels (Cayman) LLP ("***Harneys***"), Cayman Islands counsel to Xinyuan.

---

[1] Capitalized terms used but not defined in this Reply shall have the meanings given them in the Motion.

## PRELIMINARY STATEMENT

1.      In public filings made with the SEC prior to the Motion, Xinyuan detailed its efforts to restructure the Scheme Notes, which includes the notes held by the Petitioning Creditors, through a forthcoming scheme of arrangement in the Cayman Islands. Despite obvious progress made by Xinyuan as set forth in the public filings and sworn statements, the foundation of the Petitioning Creditors' objection to the Motion is that a scheme of arrangement is a "pipe dream" and has "zero chance of success." As shown below, those statements were irresponsible and objectively false when made and they are more so now.

2.      On June 25, 2025, Xinyuan filed a petition with the Grand Court for the Cayman Islands commencing proceedings for approval of the proposed scheme of arrangement. Rather than focus its energies and resources on the Cayman restructuring proceedings, Xinyuan has been forced to contend with value-destructive litigation in a foreign jurisdiction. An extension of time to respond to the Involuntary Petition will help minimize the burden on Xinyuan caused by the Involuntary Petition, allow noteholders impacted by the scheme of arrangement to participate in the Cayman proceedings without the distraction and burden caused by parallel proceedings that may produce inconsistent results, and will allow continued development of the evidentiary record on a motion to dismiss or other relief that may be sought by the parties while potentially narrowing the issues before the Court. For these and other reasons, there is cause to extend the time for Xinyuan to respond to the Involuntary Petition.

3.      In the Motion, Xinyuan sought an extension of 30 days from the date of the Motion filed on May 30, 2025 on presentment. However, the Petitioning Creditors' objection necessitated a hearing which was not scheduled until after June 30, 2025. The filing of the Motion automatically extended the deadline through the date the Court resolves the Motion pursuant to Local Bankruptcy

Rule 9006-2. Accordingly, Xinyuan respectfully requests that the court grant an extension of 30 days from the hearing date of July 15, 2025 to August 15, 2025, without prejudice to further extensions that may be sought by Xinyuan. If the Court decides to deny the Motion, Xinyuan respectfully requests that the Court grant it a week from the July 15 hearing to file an answer or motion to dismiss the Involuntary Petition.

## REPLY

4.      A court has "broad discretion" to grant or deny extensions in federal proceedings. *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir.2012) (quoting Wright & Miller, Federal Practice and Procedure § 1165); *In re Heartland Steel, Inc*., No. 1:03-CV-802-DFH, 2003 WL 23100035, at *3 (S.D. Ind. Dec. 16, 2003) ("Rule 9006(b) uses the broad standard of 'cause' in allowing extensions of time when the extension is requested before the applicable deadline has expired.").

5.      For the reasons set forth below, there is ample cause to extend Xinyuan's time to respond to the Involuntary Petition.

### a.  *Xinyuan Has Commenced Proceedings in the Cayman Islands*

6.      In support of the Motion, Xinyuan submitted the Form 6-K dated May 27, 2025 it filed with the U.S. Securities and Exchange Commission (the "*SEC*").[2] The Form 6-K disclosed that Xinyuan is pursuing an offshore debt restructuring (the "*Cayman Restructuring*") through a Scheme of Arrangement (the "*Cayman Scheme*" or the "*Scheme*") pursuant to section 86 of the Cayman Islands Companies Act (2025 Revision) under which the Scheme Notes[3] will be restructured in accordance with a Restructuring Support Agreement (the "*RSA*").

---

[2] A copy of the Form 6-K is attached to the Zhang Aff. as Exhibit 2.

[3] In the Zhang Affidavit, there was an inadvertent misquotation of Xinyuan's Form 20-F stating that the obligations under the indenture (the "*2024 Indenture*") governing the January 2024 Senior Secured Notes are guaranteed by Xinyuan and certain wholly-owned subsidiaries and are secured by a pledge of the capital stock of Xinyuan and certain wholly-owned subsidiaries. The obligations under the 2024 Indenture are not

7.      On June 25, 2025, Xinyuan filed a petition with the Grand Court for the Cayman Islands (the "*Cayman Court*") commencing proceedings (the "*Cayman Proceedings*") for approval of the Cayman Scheme.[4] Harneys was engaged as Cayman Islands legal counsel on May 15, 2025 and Xinyuan has engaged other professionals in connection with the Cayman Restructuring, including Zhong Lun Law Firm LLP to act as its international legal counsel on April 15, 2025, DF King Ltd as its information agent to facilitate communications between Xinyuan and holders of Scheme Notes ("*Scheme Creditors*") on May 16, 2025, and Deloitte and Touche Financial Advisory Services Ltd to provide a report on the estimated total recovery for Scheme Creditors on June 16, 2025.[5] At the time that Harneys was engaged, Xinyuan had already been in advanced discussions with a group of holders of the Scheme Notes with a view to facilitating the formulation of a holistic restructuring proposal.[6] As of the date of the Hobden Declaration, approximately thirty-eight holders of Scheme Creditors  holding over 31.48% of the total aggregate principal amount of the Scheme Notes have acceded to the RSA.[7] Xinyuan expects to obtain support from holders of Scheme Notes holding an additional 30% of the total aggregate principal amount of the Scheme Notes, and is in the process of working towards eventually reaching the requisite statutory majority required for the approval of the Cayman Scheme.[8]

---

guaranteed by Xinyuan or secured by a pledge of its capital stock. Zhang Declaration, ¶ 11. The obligations are guaranteed solely by certain wholly-owned subsidiaries and are secured by a pledge of the capital stock of certain wholly-owned subsidiaries according to the Form 20-F (page 126) (including by Xinyuan Real Estate, Ltd. which is a different entity than the Alleged Debtor herein, Xinyuan Real Estate **Co**., Ltd). *Id.*

[4] Hobden Decl. ¶ 15.

[5] *Id*. ¶¶ 17, 22-24.

[6] *Id*. ¶ 25.

[7] *Id.* ¶ 28; Zhang Decl. ¶ 7.

[8] Hobden Decl. ¶ 28.

8.      The Cayman Court has scheduled September 30, 2025 as the date for the hearing ("***Convening Hearing***") on Xinyuan's summons seeking orders and directions in respect of the Cayman Scheme.[9]  After the Convening Hearing, and assuming that the Cayman Court grants the orders sought in the Summons, Xinyuan intends to convene a meeting of the Scheme Creditors for the purposes of voting on the Cayman Scheme (the "***Scheme Meeting***") on or around October 27, 2025.[10] The Scheme must then be approved by the requisite statutory majority, namely, a majority in number representing 75% in value of the creditors or class of creditors present and voting at the Scheme Meeting, before Xinyuan can return to the Cayman Court to seek sanction (i.e., approval) of the Cayman Scheme at a subsequent hearing.[11] Should the matter proceed according to plan, it is anticipated that the Cayman Restructuring will be completed by December 30, 2025 (notwithstanding that the longstop date of the Restructuring as provided for in the RSA, and by which time all necessary steps to complete the Restructuring must be completed, is currently April 30, 2026).[12]

9.      The existence of the Cayman Scheme is clearly an inflection point that will impact this involuntary proceeding and inform the Court's decision on the Involuntary Petition, and may impact the parties' next steps and expectations. Forcing Xinyuan to respond to the Involuntary Petition now when the Cayman Islands Scheme is in its infancy may not result in an expeditious disposition of the Involuntary Petition as the Cayman Proceedings will continue to develop with time. Accordingly, there is cause to extend Xinyuan's time to respond to the Involuntary Petition.

---

[9] *Id*. ¶¶ 15, 29.

[10] *Id*. ¶¶ 15, 30.

[11] *Id*. ¶ 32.

[12] *Id*. ¶ 35.

    *b.  **The Petitioning Creditors' Criticisms of the Cayman Scheme Are Baseless And Premature.***

10.      Consistent with their intent of undermining the Cayman Islands Restructuring, the Petitioning Creditors' submission of the declaration of their Cayman Islands counsel, Paul Matthew Smith (the "***Smith Declaration***"), which questions the viability of the Cayman Scheme based on suppositions and uninformed conclusions. This is not the appropriate time or forum to adjudicate the issues raised in the Smith Declaration concerning Cayman Islands law. Nonetheless, the Smith Declaration and the Objection are filled with half-truths, misstatements and conjecture that must be addressed here concerning the likelihood that the Cayman Scheme will succeed.

11.      The Smith Declaration questions whether all the Scheme Notes, including those held by the Petitioning Creditors, may be classified in a single class for voting purposes.[13] As set forth in detail in the Hobden Declaration, there is a strong basis under Cayman Islands law to classify the Scheme Notes in a single class.[14] The Petitioning Creditors claim they hold one-third of the outstanding January 2024 Senior Secured Notes and therefore can block Xinyuan from achieving the 75% threshold for class approval.[15] However, even assuming the Petitioning Creditors hold one-third of the January 2024 Senior Secured Notes, if all Scheme Creditors, including the Petitioning Creditors, are considered to be a single class, the Cayman Scheme could meet the 75% threshold for approval even if the Petitioning Creditors vote against the Cayman Scheme. In this scenario, the support of the Petitioning Creditors will not have any bearing on the overall success of the Cayman Scheme.[16] In addition, it appears likely that the Cayman Scheme will meet the "headcount test" for

---

[13] Smith Decl. ¶ 33.

[14] Hobden Decl. ¶¶ 42-53, 58-61.

[15] Objection, ¶ 18; Smith Decl. ¶ 33(b).

[16] Hobden Decl. ¶ 53.

class acceptance which requires that a numerical majority appear at the Scheme Meeting and vote in favor of the scheme.[17] Approximately 38 Scheme Creditors – excluding the Petitioning Creditors – have already acceded to the RSA.[18]

12.    The Petitioning Creditors allege without offering a scintilla of evidence that Scheme Creditors who have signed the RSA are "affiliates" of Xinyuan[19] and that affiliated creditors "are unlikely to be counted towards the 75% approval threshold for any other class of creditors."[20] Xinyuan is adamant that none of the Scheme Creditors that have signed the RSA are affiliates.[21] In any event, the Petitioning Creditors will have the opportunity to make this argument in the Caymans Islands as explained in the Hobden Declaration[22] and at this stage there is no need (or basis) for this Court to consider whether there is an insider relationship between the parties. The Petitioning Creditors complain that Xinyuan has not voluntarily furnished the identity of the Scheme Creditors that have signed the RSA.[23] However, the identity of the initial consenting creditors to the RSA has been disclosed in the petition commencing the Cayman Proceedings. To the extent the Petitioning Creditors seek additional information about the Scheme Creditors, including the amount of debt they hold, there are confidentiality obligations that limit the disclosure of such information. Moreover, in light of the Petitioning Creditors' efforts to disrupt the Cayman Restructuring, Xinyuan should not be faulted for

---

[17] Hobden Decl. ¶¶ 58-61.

[18] Hobden Decl. ¶ 28.

[19] Objection, ¶¶ 1,7,15, and 18.

[20] Objection, ¶ 16.

[21] Zhang Decl. ¶ 9.

[22] *See* Hobden Decl. ¶¶ 54-57.

[23] Objection, ¶ 16.

not voluntarily producing confidential information as it is gravely concerned that the information could be misused.

13.     The Petitioning Creditors suggest that Xinyuan must obtain 75% creditor support by the filing of the Cayman Scheme. This is inaccurate. Xinyuan must reach the 75% threshold by the Scheme Meeting when creditors vote on the Scheme.[24] The target date for the Scheme Meeting is on or about October 27, 2025.[25]

14.     Lastly, for the above reasons Smith Declaration should be excluded or given no weight as evidence. On the last page of the declaration, Mr. Smith qualifies his opinions on the basis that he "does not have enough information . . . to reach a conclusion as to the likelihood that a scheme of arrangement in the Cayman Islands would be successful."  As we now know, much of the information provided by the Petitioning Creditors to its Cayman Islands counsel is untrue or baseless.

### c.  *Xinyuan Seeks to Avoid Value-Destructive Litigation*

15.     The Petitioning Creditors blithely contend that Xinyuan "in fact has no valid defenses,"[26] although the Motion previews the multiples bases to dismiss the Involuntary Petition. Even if an Involuntary Petition satisfies the statutory requirements of § 303 – which it is not clear it does – the Involuntary Petition should nonetheless be dismissed for "cause" under § 1112(b). In a similar case, former Bankruptcy Judge Vyskocil dismissed an involuntary chapter 11 petition filed by noteholders against a non-operating company by following the holding in *In re Murray*, 900 F.3d 53, 57 (2d Cir. 2018). *See In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 600–01 (Bankr. S.D.N.Y. 2018).  Here, there are a litany of factors that establish cause for dismissal, including the

---

[24] Hobden Decl. ¶ 32.

[25] *Id.* ¶ 30.

[26] Objection, ¶ 11

Petitioning Creditors filing the Involuntary Petition as a litigation tactic to enhance its negotiating leverage against Xinyuan, the commencement of the Cayman Proceedings, and the availability of adequate remedies under non-bankruptcy law. Rather than sue on the 2004 Indenture, which is governed by New York law, in New York non-bankruptcy court, or in Xinyuan's place of incorporation (the Cayman Islands), or in Xinyuan's home jurisdiction (the Peoples' Republic of China), the Petitioning Creditors decided to force Xinyuan, a holding company with no independent operations, into chapter 11 to obtain a tactical advantage.

16.    *Second*, there are compelling grounds to dismiss the Involuntary Petition pursuant to 11 U.S.C. § 305(a)(1), which provides that a court after notice and a hearing  may dismiss or suspend all proceedings in a case at any time when "the interests of creditors and the debtor would be better served by such dismissal ...[.]" 11 U.S.C. § 305(a)(1). The decision to abstain is made on a case-by-case basis considering the totality of the circumstances and courts generally rely on seven factors when considering abstention. *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008).

17.    While all factors are considered, not all are given equal weight in every case.  *In re Monitor Single Lift I*, 381 B.R. at 465. "Where there is a pending foreign insolvency proceeding, concerns of comity must be taken into account and deference must be given to the foreign proceedings." *Id.* (citing *In re Compania de Alimentos Fargo, S.A.,* 376 B.R. 427, 434 (Bankr.S.D.N.Y.2007)). "[The Second Circuit Court of Appeals] ha[s] repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.... In such cases, deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and ... do not contravene the laws or public policy of the United States." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418,

424 (2d Cir.2005); *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. at 434 (citing cases).

18.    The same and similar reasons that establish cause for dismissal pursuant to § 1112(b) also support dismissal on abstention grounds. To illustrate the analysis that would apply here, in *Alimentos Fargo* investors holding 65% of the public debt of the alleged debtor, Compañía de Alimentos Fargo, S.A. ("**Fargo**"), whose operations were centered in Argentina and had minimal property in the U.S., filed an involuntary chapter 11 petition against Fargo because they were dissatisfied with the progress and rulings in the insolvency proceeding Fargo filed in Argentina. 376 B.R. at 427. The court dismissed the involuntary petition under § 305(a)(1) because, among other reasons, it found that the Argentine insolvency proceedings, while flawed, were procedurally and substantively fair, a parallel chapter 11 case would be time-consuming and expensive and provide a questionable benefit, and it was plausible that the petitioner filed the involuntary case to "hijack the [Argentine proceedings or, at a minimum, increase their leverage in any negotiations." *Id.* at 441.

19.    Similarly, in *In re Globo Comunicacoes e Participacoes S.A.*, the District Court found that the involuntary case commenced by bond holders holding a minority of the alleged debtor's debt subject to an indenture governed by New York law "appears to represent a strong candidate for abstention" because, *inter alia*, the alleged debtor was a holding company organized under Brazilian law with the "vast majority" of its property and operations located in Brazil and the alleged debtor was actively pursuing an out-of-court restructuring in Brazil. 317 B.R. 235, 241 (S.D.N.Y. 2004). Like the alleged debtor in *Globo Comunicacoes*, Xinyuan, an entity incorporated in the Cayman Islands and having most of its assets in China, is a holding with no operations of its own and is actively pursuing a restructuring with holders of New York law bonds outside of the United States.

20.     The Petitioning Creditors' contention that a "hypothetical" chapter 15 case does not support abstention is a distraction.[27] Section § 305(a)(1) requires a fact-intensive inquiry and whether or not there is a plenary insolvency proceeding pending in a foreign jurisdiction cannot be dispositive on whether abstention is appropriate. The Objection points to the second clause in § 305(a)(1) which applies when a chapter 15 petition has been filed and allows for abstention if "the purposes of chapter 15 of this title would be best served by such dismissal or suspension." As explained above, abstention is appropriate pursuant to the first clause § 305(a)(1) without the filing of a chapter 15 petition.

21.     *Lastly*, there are other grounds that support dismissal, including forum non-conveniens. "A federal court has discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (citations and internal quotations omitted). Forum non-conveniens is particularly compelling here because there is "a strong presumption in favor of the plaintiff's choice of forum," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508, 67 S.Ct. 839). Under the circumstances dismissal of the Involuntary Petition is also warranted on forum nonconveniens grounds. *Cf. Globo Comunicacoes e Participacoes*, 317 B.R. at 258–59 (directing bankruptcy court on remand to consider whether the involuntary petition should be dismissed for forum non conveniens); *In re*

---

[27] Objection, ¶ 24.

*Xacur,* 219 B.R. 956, 969 (Bankr. S.D. Tex. 1998) (dismissing involuntary petition for forum non conveniens).

22.     The Petitioning Creditors' conduct has required Xinyuan to divert attention and resources away from the Cayman Restructuring and toward dealing with the litigation spurred by the filing of the Involuntary Petition. An extension of time will help minimize the burden on Xinyuan caused by the Involuntary Petition and consequently benefit Scheme Creditors who are relying on the Cayman Scheme to resolve their claims in an economical, predictable, and equitable manner without the risks and costs associated with parallel proceedings. Moreover, an extension will allow the continued development of the record before the Court, including progress made in the Cayman Proceedings, which will inform a decision on a motion to dismiss or other relief that may be sought by the parties while potentially narrowing the issues before the Court.

23.     Based on the foregoing, there is ample cause to extend Xinyuan 's time to respond to the Involuntary Petition.

## RESERVATION OF RIGHTS

24.     In the event the Court denies this Motion, Xinyuan reserves the right to request that the Court grant it an additional week to file an answer or motion to dismiss the Involuntary Petition. Furthermore, Xinyuan reserves the right to seek discovery against the Petitioning Creditors and any other person as appropriate and in particular should the Court determine it cannot decide the Motion on the current record.

**WHEREFORE,** Xinyuan respectfully requests entry of an Order substantially in the form attached as Exhibit "A" extending its time to respond to the Involuntary Petition to August 15, 2025, overruling the Objection, and granting such other and further relief as is just.

Dated: New York, New York     Respectfully submitted,
      July 10, 2025

                             WINDELS MARX LANE & MITTENDORF, LLP
                             *Attorneys for Xinyuan Real Estate Co., Ltd.,*
                             *Alleged Debtor*

                         By:     */s/ Alan Nisselson*_____
                               Alan Nisselson (anisselson@windelsmarx.com)
                               Eloy A. Peral (eperal@windelsmarx.com)
                               156 West 56th Street
                               New York, New York 10019
                               Tel. (212) 237-1000 / Fax. (212) 262-1215

**EXHIBIT A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | Chapter 11 |
|---|---|
| XINYUAN REAL ESTATE CO., LTD., | Case No. 25-10745-pb |
| Alleged Debtor. | |

### ORDER EXTENDING TIME FOR ALLEGED DEBTOR TO ANSWER OR
### MOVE AGAINST THE INVOLUNTARY PETITION

Alleged debtor Xinyuan Real Estate Co., Ltd. ("*Xinyuan*"), having filed a Motion dated May 30, 2025 (Doc. 15) ("*Motion*") for entry of an Order extending Xinyuan's time to file an answer or response to the involuntary petition for an additional 30 days from the date of the Motion ("*Proposed Order*"); and Xinyuan, by its counsel, Windels Marx Lane & Mittendorf, LLP, Leslie S. Barr, Esq., of counsel, having filed a notice of presentment of the Proposed Order; and on June 9, 2025, Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP, Mars Partner Limited, and Star Freight & Trading Co., Limited (the "*Petitioning Creditors*") filed an objection to the Motion on June 9, 2025 (Doc. 17) ("*Objection*"); and Xinyuan having filed a Reply to the Objection on July 10, 2025 ("*Reply*"); and the Court having held a hearing on July 15, 2025 to consider the Motion, Objection and Reply; and upon the record of this case; and good cause appearing therefor, it is hereby

**ORDERED**, that the Objection is overruled and the Motion is granted as set forth below; and it is further

**ORDERED**, that pursuant to Federal Rules of Bankruptcy Procedure 1011 and 9006, the time for Xinyuan to file an answer or response to the involuntary petition is hereby extended to and through August 15, 2025; and it is further

**ORDERED**, that Xinyuan may seek further extension of that deadline upon a further motion showing good cause.

{12468184:4}

Dated: New York, New York
        July ___, 2025

_____
United States Bankruptcy Judge