**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>XINYUAN REAL ESTATE CO., LTD.,<br><br>                  Alleged Debtor. | <u>Chapter 11</u><br><br>Case No. 25-10745-pb |

<br><br>

**MEMORANDUM OF LAW OF**
**ALLEGED DEBTOR IN SUPPORT**
<u>**OF DISMISSAL OF INVOLUNTARY PETITION**</u>

<br><br>

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000

*Attorneys for Xinyuan Real Estate Co., Ltd.,*
*Alleged Debtor*

{12532750:5}

**TABLE OF CONTENTS**

I.   **PRELIMINARY STATEMENT** ...................................................................................1

II.  **FACTUAL BACKGROUND** ...................................................................................3

    a.   General Background ........................................................................................3

    b.   The Xinyuan 14% Notes ..................................................................................4

    c.   Cithara ............................................................................................................4

    d.   Mars Partner ...................................................................................................6

    e.   Star Freight ......................................................................................................7

    f.   Cithara's Secret Scheme to Recruit Noteholders ...........................................7

    g.   The Hong Kong Litigation ...............................................................................9

III. **ARGUMENT** ...........................................................................................................13

    a.   Cithara Global SPC and Cithara Bosideng Fund are Ineligible to be Petitioning Creditors because their Claims Against the Debtor are Subject to a Bona Fide Dispute under § 303(b)(1) of the Bankruptcy Code ...............................................13

    b.   The Cithara Bosideng Fund Lacks Standing to be a Petitioning Creditor or to Assert a Claim Against the Debtor .......................................................................18

    c.   The Petitioners' Concealed Scheme to Acquire their Claims against the Debtor Establishes Cause to Dismiss the Involuntary Petition under § 1112(b) of the Bankruptcy Code ...............................................................................................20

IV.  **RESERVATION OF RIGHTS** ..............................................................................24

V.   **CONCLUSION** .......................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.),*
741 F.3d 651 (5th Cir. 2014) ...................................................................................15, 17

*In re EM Equipment, LLC,*
504 B.R. 8 (Bankr. D. Conn. 2013) .................................................................................15

*In re Euro-Am. Lodging Corp.,*
357 B.R. 700 (Bankr. S.D.N.Y. 2007) (Bernstein, J.) ......................................................14, 15

*Fustolo v. 50 Thomas Patton Drive, LLC,*
816 F.3d 1 (1st Cir. 2016) ...............................................................................................15

*In re Innkeepers USA Tr.,*
448 B.R. 131 (Bankr. S.D.N.Y. 2011) .............................................................................20

*Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC),*
330 F.3d 111 (2d. Cir. 2003), *abrogated on other grounds by Adams v. Zarnel
(In re Zarnel),* 619 F.3d 156 (2d Cir. 2010)...................................................................13, 14

*In re Koffee Kup Bakery, Inc.,*
No. 21-10168, 2022 WL 141516 (Bankr. D. Vt. Jan. 14, 2022) .....................................14, 15

*Krys v. Official Comm. Of Unsecured Creditors of Refco, Inc. (In re Refco, Inc.),*
505 F.3d 109 (2d Cir. 2007)...........................................................................................19, 20

*In re Manolo Blahnik USA, Ltd.,*
619 B.R. 81 (Bankr. S.D.N.Y. 2020) (Glenn, J.).............................................................15, 17

*In re Metrogate, LLC,*
No. 15-12593 (KJC), 2016 WL 3150177 (Bankr. D. Del. May 26, 2016) .......................22, 24

*In re Mt. Daifexries, Inc.,*
372 B.R. 623 (Bankr. S.D.N.Y. 2007) (Morris, J.)...........................................................15

*In re Murray,*
543 B.R. 484 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017),
*aff'd*, 900 F.3d 53 (2d Cir. 2018) ...................................................................................21

*In re Pivar,*
No. 23-10938 (JLG), 2024 WL 823035 (Bankr. S.D.N.Y. Feb. 27, 2024) .....................15

*In re PTGi Int'l Carrier Servs., Inc.*,
    668 B.R. 517 (Bankr. D. Del. 2025) ................................................................23

*In re Saint Vincent's Catholic Med. Ctrs. of New York*,
    429 B.R. 139 (Bankr. S.D.N.Y. 2010) .............................................................20

*Southern Blvd., Inc. v. Martin Paint Stores*,
    207 B.R. 57 (S.D.N.Y.1997) ............................................................................20

*State Dep't of Revenue v. Blixseth*,
    942 F.3d 1185-86 (9th Cir. 2019) ....................................................................15

*In re Taberna Preferred Funding IV, Ltd.*,
    594 B.R. 576 (Bankr. S.D.N.Y. 2018) ........................................................20, 21

*In re Taub*,
    439 B.R. 261 (Bankr. E.D.N.Y. 2010) (Craig, J.) ...........................................15

*In re Tichy Elec. Co.*,
    332 B.R. 364 (Bankr. N.D. Iowa 2005) ...........................................................23

*In re TPG Troy, LLC*,
    492 B.R. 150 (Bankr. S.D.N.Y. 2013) .............................................................14

*In re TV Azteca, S.A.B. de C.V.*,
    No. 23-10385 (LGB), 2023 WL 8059362 (Bankr. S.D.N.Y. Nov. 20, 2023) .............13, 14, 15

*In re Xinyuan Real Est. Co. Ltd.*,
    No. 25-10745 (PB), 2026 WL 592250 (Bankr. S.D.N.Y. Mar. 3, 2026) ...................................4

**Statutes**

Bankruptcy Code § 303(i) ......................................................................................24

Bankruptcy Code § 303(b)(1) ......................................................................... *passim*

Bankruptcy Code § 1109 ..................................................................................19, 20

Bankruptcy Code § 1112(b) ....................................................................2, 20, 21, 24

Cayman Is. Companies Act §§ 216, 221 (2025) ...................................................19

**Other Authorities**

Bankruptcy Rule 1003(a) ...............................................................................5, 6, 7, 23

Xinyuan Real Estate Co., Ltd. (the "*Debtor*"), the alleged debtor in the above-captioned chapter 11 case, respectfully submits this memorandum of law in support of dismissal of the involuntary petition.

## I.    PRELIMINARY STATEMENT

At least three grounds compel dismissal of the involuntary petition. *First*, Cithara Global Multi-Strategy SPC, or Bosideng Industry Investment Fund SP to the extent that fund has the capacity to assert a claim independently against the Debtor, is ineligible to be a petitioning creditor as the claim is subject to a bona fide dispute under § 303(b)(1) of the Bankruptcy Code. During late January to early February 2021, the Debtor (Xinyuan Real Estate Co. Ltd.) transferred $60 million to fund the acquisition by Xinyuan Real Estate Ltd. ("*XRE*"), a wholly-owned subsidiary, of shares in Cithara Series 3 SP, a fund under the Cithara Global Multi-Strategy SPC. The parties entered into an arrangement whereby Cithara Series 3 SP would purchase $100 million of the notes issued by Xinyuan – the same notes that underly the Petitioners' claims – and Cithara would obtain financing for the difference ($40 million). In return, the fund's investment manager, Cithara Investment, would receive 9% interest on the $40 million and the difference between the 9% and the coupon rate under the notes (14%) would be returned to XRE. The Debtor paid an additional $5 million on behalf of XRE in May 2021 to satisfy a "margin call" by Cithara's agent. The Debtor's initial $60 million transfer coincided with the Debtor's issuance of the notes on January 25, 2021. The only assets held by Cithara Series 3 SP were these notes issued by the Debtor and related repurchase contracts.

The Debtor would later learn that in or around April/May 2021, the notes held by Cithara Series 3 SP were liquidated and the net asset value of XRE's shares in the fund went from $65 million to $0.00 within a one-week period. After settlement discussions concerning the counterclaim against Cithara collapsed, the Debtor and XRE commenced an action in Hong Kong

1

seeking, *inter alia*, to recover $75,400,000 in monetary damages and a declaration that the notes which apparently are now held by the Cithara Bosideng Fund are held in a constructive trust. As the Debtor's claims and Cithara's claims share the same subject matter, the Debtor's claims against Cithara and the relief it seeks concerning the notes held by the Cithara Bosideng Fund create a bona fide dispute of Cithara's claim against the Debtor. Without Cithara the Petitioners cannot satisfy the requirement in § 303(b)(1) that at least three entities with qualifying claims sign an involuntary petition.

*Second*, as a constituent fund under a Segregated Portfolio Company, the Cithara Bosideng Fund did not have standing to file the involuntary petition. The Cithara Bosideng Fund is a Segregated Portfolio (SP) existing under its Segregated Portfolio Company (SPC), the Cithera Global Multi-Strategy SPC. Under Cayman Island law as applied by the Second Circuit, SPs do not have the capacity to sue or be sued. As such, the Cithara Bosideng Fund did not have standing to file the petition and does not have standing to assert a claim against the Debtor.

*Lastly*, the Petitioners' lack of candor and bad faith scheme to recruit noteholders to join in litigation against the Debtor establishes cause to dismiss the petition under § 1112(b) of the Bankruptcy Code. Vision Capital, a Hong Kong entity, acted as broker for Mars Partner and Star Freight to purchase their notes. The Debtor recently learned that one of the entities that comprise the Vision Capital group of companies is owned in part by Zhang Jun and Song Yan, the individuals who signed the petition on behalf of the Cithara Bosideng Fund and Mars Partner, respectively. During his deposition Mr. Song apparently gave false statements when he repeatedly testified that he has no ownership interest in Vision Capital. Mr. Song also testified that Mars Partner is an investor in the Cithara Bosideng Fund.

Star Freight is a business engaged in freight forwarding. Apart from the notes issued by the

Debtor, it currently owns one other type of note. Star Freight purchased $300,000 of notes issued by the Debtor, which is .5% compared to the face amount of notes purportedly held by the Cithara Bosideng Fund and 4.2% compared to the notes held by Mars Partners. Star Freight (and Mars Partner) purchased their notes when the Debtor was in in default of its payment obligations under the notes. Star Freight purchased its notes two months after Mars Partners purchased its notes and contacted an attorney recommended by Vision Capital – a company partly owned by Zhang Jun and Song Yan – several months after Star Freight bought its notes. The foregoing scheme, and efforts to conceal such scheme, to recruit Star Freight to join in litigation, and ultimately in the involuntary petition, against the Debtor weighs heavily in favor of dismissal for cause.

For the foregoing reasons, the Court should dismiss the involuntary petition.

## II. FACTUAL BACKGROUND

### a. *General Background*

On April 14, 2025 (the "***Petition Date***"), Cithara Global Multi-Strategy SPC - Bosideng Industry Investment Fund SP (the "***Cithara Bosideng Fund***"), Mars Partner Limited ("***Mar Partner***"), and Star Freight & Trading Co., Limited ("***Star Freight***," together with the Cithara Bosideng Fund and Mars Partner as "***Petitioners***") filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code against the Alleged Debtor.

The Debtor is a Cayman Islands exempted company formed in 2007. It is a pure holding company, with no material operations of its own. It serves as the ultimate corporate parent of a group of direct and indirect subsidiaries (together with the Debtor, the "***Xinyuan Group***") engaged in the business of real estate development and property management, which operate primarily in the People's Republic of China (the "***PRC***" or "***China***"). Additional background on the Debtor,

3

the Xinyuan Group and these involuntary proceedings can be found in this Court's *Decision Denying Debtor's Motion to Dismiss Involuntary Petition* dated March 3, 2026.[1]

### b.    *The Xinyuan 14% Notes*

On January 25, 2021, the Debtor issued a collective aggregate principal amount of $270,000,000 of senior secured notes bearing interest at 14.0% per annum and maturing on January 25, 2024 (the "*Xinyuan 14% Notes*").[2] The Debtor has not made interest payments for the Xinyuan 14% Notes since July 25, 2022.[3] On August 18, 2023, certain holders of the January 2024 Senior Secured Notes in the aggregate principal amount of $86.7 million exchanged their notes for September 2027 senior secured notes.[4] The Xinyuan 14% Notes are governed by an indenture dated as of January 25, 2021 (the "*2024 Indenture*") under which Citicorp International Limited serves as trustee.[5] The Debtor's obligations under the 2024 Indenture are guaranteed and secured by a pledge of the capital stock of certain wholly-owned subsidiaries of the Debtor.[6]

### c.    *Cithara*

Cithara Global Multi-Strategy SPC (the "*Cithara Global SPC*") is an exempted segregated portfolio company that was incorporated with limited liability under the Companies Law of the Cayman Islands.[7] Each class of shares in Cithara Global SPC is linked to a segregated portfolio

---

[1] [hereinafter the "*Dismissal Denial Decision*"). *See also In re Xinyuan Real Est. Co. Ltd*., No. 25-10745 (PB), 2026 WL 592250 (Bankr. S.D.N.Y. Mar. 3, 2026).

[2] *See* Form 20-F of Xinyuan Real Estate Co., Ltd. for the fiscal year ended December 31, 2024 ("*Form 20-F*"), at 126. A copy of the Form 20-F is attached as Exhibit A to the Declaration of Yong Zhang (the "*Zhang Declaration*") [ECF No. 32], Chairman of the Board for the Debtor, submitted on November 26, 2025 in support of the motion to dismiss the involuntary petition.

[3] *Id*. at 128.

[4] *Id.* at 126, 128.

[5] *Id*. at 227.

[6] *Id*. at 126.

[7] *See* Declaration of Eloy A. Peral, Esq., dated June 11, 2026, submitted on behalf of Alleged Debtor in support of the instant Motion (the "**Peral Decl.**") Exh. 1 (Offering Memorandum for Cithara Global Multi-Strategy SPC (Cithara0000093) ("**Offering Memorandum**"); Exh. 2 (Amended and Restated Memorandum and Articles of Association for Cithara Global Multi-Strategy SPC (Cithara0000046)).

("**Segregated Portfolio**").[8] "As a matter of Cayman Islands law assets attributable to each Segregated Portfolio of the Fund shall only be available to creditors in respect of that Segregated Portfolio and the assets of that Segregated Portfolio shall be protected from creditors of the Fund who are not creditors in respect of that Segregated Portfolio."[9] The Series 3 SP ("*Cithara Series 3 Fund*") was a Segregated Portfolio operating under Cithara Global SPC[10] and so is the Cithara Bosideng Fund.[11] Cithara Investment International Limited ("*Cithara Investment*"), a Hong Kong incorporated company, is the investment manager for each SP within Cithara Global SPC,[12] including the Cithara Bosideng Fund and the Cithara Series 3 Fund.[13] Cithara Investment holds 100 percent of the shares in the Cithara Global SPC.[14] Mars Partner is a current investor in the Cithara Bosideng Fund.[15]

Zhang Jun holds 100 percent of the ownership interest in Cithara Investment through various entities.[16] He was a co-founder of the company[17] and is a director of Cithara Global SPC.[18] A statement attached to the declaration of Zhang Jun on behalf of the Cithara Bosideng Fund pursuant to Bankruptcy Rule 1003(a) (the "*Cithara Rule 1003(a) Declaration*") indicates that on or about February 9, 2021 and February 10, 2021, a total of $100 million of Xinyuan 14% Notes were transferred to the Cithara Bosideng Fund.[19] An email dated August 13, 2024 from Hong Kong

---

[8] Offering Memorandum at Cithara0000100.

[9] Offering Memorandum at Cithara0000100.

[10] *See* Peral Decl. Exh. 3 (Supplement to the Offering Memorandum for Class C2 Shares Corresponding to Series 3 SP (CITHARA0000153) ("**Supplement to Offering Memorandum**")).

[11] *See* Peral Decl. Exh. 4 (Cithara0000001 ("**Shareholding Structure**")).

[12] Offering Memorandum at Cithara0000101.

[13] *See* Peral Decl. Exh. 5 (Relevant excerpted sections of the June 2, 2026 deposition transcript of Jun Zhang ("**Zhang Tr.**"); Zhang Tr. 62:13-25, 63:2-6.

[14] Shareholding Structure at Cithara0000001.

[15] *See* Peral Decl. Exh. 6 (Relevant excerpted sections of the June 3, 2026 deposition transcript of Yan Song ("**Song Tr.**"); Song Tr. 47-49.

[16] Shareholding Structure at Cithara0000001.

[17] Zhang Tr. 9:19-20; Offering Memorandum at Cithara0000113.

[18] Shareholding Structure at Cithara0000001.

[19] *See* ECF No. 1-2 at pgs. 5-6.

counsel, Ashurst, to the Indenture Trustee indicates that the Cithara Bosideng Fund holds $90.5 million in Xinyuan 14% Notes.[20] However, the Cithara Rule 1003(a) Declaration states that the Cithara Bosideng Fund holds a claim against the Debtor in the aggregate amount of at least $58,500,00 (plus applicable interest, fees, and other charge).[21]

### d.     *Mars Partner*

In his declaration on behalf of Mars Partner pursuant to Bankruptcy Rule 1003(a) (the "***Mars Rule 1003(a) Declaration***"), Mr. Song states that Mars Partners acquired Xinyuan 14% Notes on or about February 23, 2024 and that his claim against the Debtor is at least $7 million (plus applicable interest, fees, and other charges).[22] He further states that the "consideration paid or received by the [Mars Partner] in connection with each purchase of the [Xinyuan 14%] Notes is also reflected in the attached documents."[23] Attached to the Mars Rule 1003(a) Declaration are the same emails included with the Cithara Rule 1003(a) Declaration and a "Daily Statement" from Vision Capital International Holdings Limited ("***Vision Holdings***") all showing he acquired Xinyuan 14% Notes in the aggregate face amount of $7 million.[24] The Daily Statement indicates that the "market value" of the $7 million of Xinyuan 14% Notes was $1,260,000 as of February 23, 3024.[25]

---

[20] *See* ECF No. 1-2 at pg. 15.
[21] *See* ECF No. 1-2 at ¶3.
[22] *See* ECF No. 1-4 at ¶3.
[23] *Id.*
[24] *Id.* at pg. 4
[25] *Id.*

6

### e.    *Star Freight*

Star Freight is 100 percent owned by Zhu Yu Xiang[26] and is in the business of international trade and freight forwarding.[27] It currently holds notes issued by two companies – Xinyuan and Sino-Ocean. It holds Sino-Ocean notes in the aggregate face amount of $3 million.[28]

In his declaration on behalf of Star Freight pursuant to Bankruptcy Rule 1003(a) (the "***Star Freight Rule 1003(a) Declaration***"), Mr. Zhu states that Star Freight acquired Xinyuan 14% Notes on or about April 19, 2024, and that his claim against the Debtor is at least $300,000 (plus applicable interest, fees, and other charges).[29] He further states that the "consideration paid or received by the [Start Freight] in connection with each purchase of the [Xinyuan 14%] Notes is also reflected in the attached documents."[30] Attached to the Star Freight Rule 1003(a) Declaration are the same emails included with the Cithara Rule 1003(a) Declaration and Mars Partner Rule 1003(a) Declaration and a "Daily Statement" from Vision Holdings showing Star Freight acquired Xinyuan 14% Notes in the aggregate face amount of $300,000.[31] The Vision Holdings Daily Statement indicates that the "market value" of the $300,000 of Xinyuan 14% Notes were $57,000 as of April 19, 2024.[32]

### f.    *Cithara's Secret Scheme to Recruit Noteholders*

Mr. Song and Mr. Zhu testified during their depositions that an individual named "Max" with Vision was the broker (the "***Vision Broker***") that arranged their acquisition of Xinyuan 14% Notes.[33] The Vision Broker advised Mr. Song that Mars Partner could enforce their rights as

---

[26] *See* Peral Decl. Exh. 7 (Relevant excerpted sections of the June 4, 2026 deposition transcript of Xiang Yu Zhu ("**Xiang Tr.**"); Xiang Tr. 12:18-21.
[27] Xiang Tr. 12:6-10.
[28] Xiang Tr. 60:6-18; 66:9-19.
[29] *See* ECF No. 1-6 at ¶3.
[30] *Id.*
[31] *Id.* at pgs. 7-15.
[32] *Id.* at pg. 4.
[33] Song Tr. 39:16-40:7; Zhu Tr. 30:11-15.

noteholders through litigation in the U.S.,[34] and the Vision Broker introduced Mr. Song and Mr. Zhu to the Petitioners' Hong Kong counsel, Ashurst.[35] Mr. Zhu contacted Ashurst "several months" after he purchased the Xinyuan 14% Bonds on April 19, 2024.[36]

Vision Capital Group Limited ("*Vision Group*") and Vision Holdings are Hong Kong corporations incorporated on June 29, 2025 and July 10, 2015, respectively.[37] According to Vision Group's Annual Return dated June 29, 2025 filed with the Hong Kong Companies Registry, Mr. Song and Zhang Jun each own 3,000 shares (for a total of 6,000) of the 9,000 shares in Vision Group.[38] The offices of Vision Group, Vision Holdings, and Cithara are all located on the 36th floor at the ICBC Tower with an address of 3 Garden Road, Central Hong Kong according to publicly available documents.[39] The offices of Vision and Cithara are located in the same suite (3607-3609) and share the same entrance and reception area:[40]



---

[34] Song Tr. 35:23-39:14.

[35] Song Tr. 47:2-3.

[36] Xiang Tr. 38:13-39:5.

[37] *See* Peral Decl. Exh. 8 (HK Companies Registry public profile pages, accessed on June 4, 2026, for Vision Capital International Holdings Limited & Vision Capital Group Limited).

[38] Song Tr. Exh. F. (Annual Return).

[39] *Compare* Song Tr. Exh. F (Annual Return); ECF No. 1-4 at pg. 4. ECF No. 1-6 at pg. 4 (Vision Daily Statements); and https://www.citharainvestment.com/eng/contactus (website of the Cithara Investment) (last accessed on June 9, 2026).

[40] Prior to the end of briefing, the Debtor intends to submit a declaration from the individual who took this photo.



At least three times during his deposition, Song Yan was asked whether he has any ownership interest whatsoever in "Vision" or Vision Capital Group Limited.[41] Each time, Song Yan unequivocally responded that he holds no such interest.[42]

### g.    *The Hong Kong Litigation*

On May 14, 2026, the Debtor and Xinyuan Real Estate Limited ("**XRE**," together with the Debtor as the "**HK Plaintiffs**") initiated an action with the High Court of the Hong Kong Special Administrative Region (the "**HK High Court**") against Cithara Global SPC, Cithara Investment, and Valuable Capital Limited ("**VCL**" together with Cithara SPC and Cithara Investment as the "**HK Defendants**"). A sealed copy of the Writ of Summons with Indorsement of Claim was issued by the HK High Court on May 27, 2026 (the "**HK Writ**"), in which the HK Plaintiffs are seeking, *inter alia*, to recover no less than $75,400,000 in monetary damages and a declaration that the HK Defendants are holding $100 million in Xinyuan 14% Notes (the "**100M Notes**") in constructive trust as trustee for XRE.[43] As set forth in the HK Writ and as supported by the record here, between late 2020 and January 2021 VCL and Cithara Investment proposed the following transaction to the HK Plaintiffs:

---

[41] Song Trans. at 53-8-13; 53:20-23; 61:5-7.

[42] *Id.*

[43] A copy of the May 27, 2026 HK Writ in the original English and Chinese is attached to the Peral Decl. as Exh. 9.

a)    Debtor and/or XRE would subscribe to Cithara Series 3 Fund with an investment amount of $60,000,000 (the "**60M Investment**");

b)    Cithara Series 3 Fund would subscribe to the 100M Notes; and

c)    VCL and/or Cithara Investment would secure the remaining $40,000,000 (the "**40M Loan**") of the 100M Notes.

(collectively, the "**Investment Scheme**").[44]

Between January 28, 2021 and February 2, 2021, VCL (acting for itself or acting as an agent of Cithara Investment) and/or Cithara Investment, giving effect to the Investment Scheme, instructed the Debtor and/or XRE to invest in Cithara Series 3 Fund as follows:

d)    XRE would invest $60,000,000, through the Debtor, to subscribe to the Cithara Series 3 Fund as the 60M Investment;

e)    The Cithara Series 3 Fund would subscribe to the 100M Notes issued by the Debtor in January 2021 with a nominal subscription amount of USD$100,000,000 (the "**Nominal Subscription Amount**");

f)    The 100M Notes would nominally yield 14% per annum interest based on the Nominal Subscription Amount as a nominal return to the Cithara Series 3 Fund (the "**Nominal Notes' Interest**");

g)    Cithara Investment would secure $40,000,000 to cover the remainder of the Nominal Subscription Amount, which represents the 40M Loan;

h)    In return, Cithara Investment would receive 9% per annum interest based on the 40M Loan (the "**40M Loan's Interest**"); and

a)    Cithara Investment would deduct the 40M Loan's Interest from the Nominal Notes' Interest, and the excess would be returned to XRE (i.e. $10,400,000) (the "**P1's Rebate**").[45]

In a "Special Matters Application" dated January 28, 2021 submitted to "Xinyuan Headquarters," a representative of the company requested approval to enter into the Investment Scheme, which request was approved after internal deliberations.[46]

---

[44] HK Writ ¶ 4.

[45] HK Writ ¶ 5.

[46] *See* Peral Decl. Exh. 10 (Special Matters Application, dated January 28, 2021 (XINDEBTOR000000774)).

10

As the HK Writ alleges, based on the above representations, XRE was induced to enter into the subscription agreement with the VCL and/or Cithara Investment[47] and paid, through the Debtor, $60,000,000 into VCL for the Investment Scheme.[48] VCL signed a Subscription Agreement on or about January 29, 2021 as "Client's A/C" subscribing to Class C2 Shares in the Cithara Series 3 Fund for a subscription amount of $60 million.[49] Cithara Investment knew that the Debtor provided the $60,000,000 transferred by XRE to VCL.[50]

On or around May 2021, the market price of the 100M Notes dropped, and VCL notified XRE of a margin call.[51] As a result, XRE paid, through the Debtor, an additional $5,000,000 to VCL to prevent forced liquidation by Cithara Investment.[52] Cithara Investment and VCL were fully aware that the Debtor provided the $5,000,000 transferred by XRE to VCL.[53] By May 2021, XRE had paid, through the Debtor, a total of $65,000,000 in accordance with the directions of VCL and/or Cithara Investment to the Cithara Series 3 Fund (the "**Nominal Investment**").[54]

---

[47] HK Writ ¶ 6; *see* Peral Decl. Exh. 3 (Supplement to Offering Memorandum at (Cithara0000155) ("The Initial Offering Period in respect of the Class C2 Shares shall commence on 22 January 2021 and will end on 29 January 2021 or such other date as the Directors may determine.")).

[48] *See* Peral Decl. Exh. 11 (Application for Telegraphic Transfer dated Feb. 2, 2021 made by Debtor to transfer $60,600,000 million to VCL (XINDEBTOR00000259)); Exh. 12 (Statement showing transfer of $60,600,000 into XRE's account at VCL (XINDEBTOR00000713)).

[49] *See* Peral Decl. Exh. 13 (Subscription Agreement for Cithara Global Multi-Strategy SPC – Series 3 Fund (Cithara000002)); Exh. 14 (Email chain dated January 29, 2021 in which Evan Xu, former General Manager with Debtor, advises VCL as follows:

      Our company wishes to subscribe to the following fund:
      Fund Name: Cithara Global Multi-Strategy SPC - Series 3 SP
      Share Class: Class C2
      Currency: USD
      Subscription Amount: USD 60 million (XINDEBTOR00000766)).

[50] HK Writ ¶ 7.

[51] HK Writ ¶ 8.

[52] *Id.*; Peral Decl. Exh. 15 (VCL Fund Subscription Form for Series 3 Fund showing $5 million subscription amount (XINDEBTOR00000782)); Exh. 16 (Special Matter Application dated May 11, 2021 prepared by Shao Bin (XINDEBTOR00000199)); Exh. 17 (Statement showing transfer of $5,050,000 into XRE's account with VCL (XINDEBTOR00000744)).

[53] HK Writ ¶ 9.

[54] HK Writ ¶ 10.

11

On or around March 2022, Cithara Investment, as manager of Cithara SPC and Cithara Series 3 Fund, liquidated the Nominal Investment.[55] After the unauthorized forced liquidation, the value of the HK Plaintiff's shares in the Cithara Series 3 Fund were entirely written off to $0.00[56] (the "**Xin Investment Loss**") as reflected in a statement provided by VCL for the week of April 9, 2022 to April 15, 2022.[57] The prior week's statement valued the shares at $65,000,000.[58]

Following this unauthorized forced liquidation, Cithara Bosideng Fund obtained the $100M Notes from Cithara Investment.[59] The Cithara Bosideng Fund alleges that it acquired the same $100M Notes indirectly from "repo counterparties."[60]

Thereafter, at various times the HK Plaintiffs sent communications to Cithara Investment demanding information surrounding the Xinyuan Investment Loss and attempting to resolve the HK Plaintiffs' claims arising from Xin Investment Loss.[61]

The Debtor and Petitioners executed a "Cooperation Framework Agreement" on or about April 21, 2025.[62] During these proceedings, the Debtor and Petitioners entered into approximately six stipulations to extend the Debtor's time to respond to the involuntary petition.[63] The parties' primary motivations for extending the response deadline was to facilitate final settlement discussions.

---

[55] HK Writ ¶ 11.

[56] HK Writ ¶ 12.

[57] *See* Peral Decl. Exh. 18 (Xinyuan Investment Statement (week of April 9 - April 15, 2022) (XINDEBTOR00000680)).

[58] *See* Peral Decl. Exh. 19 (Xinyuan Investment Statement (week of March 26 - April 1, 2022) (XINDEBTOR00000678)).

[59] HK Writ ¶ 10.

[60] *See* Peral Decl. Exh. 20 (Petitioning Creditors' Responses and Objections to Alleged Debtor's First Set of Interrogatories to Petitioning Creditors at Response to Interrogatory No. 3).

[61] *See* Peral Decl., Exh. 21 (Xinyuan Letter dated December 17, 2022 (XINDEBTOR00000205)); Exh. 22 (Xinyuan Letter dated June 24, 2025 (XINDEBTOR00000465)).

[62] *See* Peral Decl. Exh. 23 (Cooperation Framework Agreement, dated April 21, 2025 (XINDEBTOR00000756)).

[63] ECF Nos. 9, 12, 23, 25, 28, and 29.

### III.    ARGUMENT

**a.    Cithara Global SPC and Cithara Bosideng Fund are Ineligible to be Petitioning Creditors because their Claims Against the Debtor are Subject to a Bona Fide Dispute under § 303(b)(1) of the Bankruptcy Code**

Regardless of whether (Cithara Global SPC or the Cithara Bosideng Fund) is the proper party to assert a claim against the Debtor arising from the Xinyuan 14% Notes, neither entity is eligible to file an involuntary petition against the Debtor because the claim is the subject of a bona fide dispute. As explained below, the claim is subject to a bona fide dispute because the relief sought by the Debtor in the HK Litigation directly relates to and impacts Cithara's claim.

Section 303(b)(1) of the Bankruptcy Code provides in relevant part:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title- (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or *the subject of a bona fide dispute as to liability or amount* . . . .

11 U.S.C. § 303(b)(1) (emphasis added).

When determining whether a bona fide dispute exists, courts, including those in the Second Circuit, apply an objective test. *In re TV Azteca, S.A.B. de C.V.,* No. 23-10385 (LGB), 2023 WL 8059362, at *6 (Bankr. S.D.N.Y. Nov. 20, 2023) (citing *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 117-18 (2d. Cir. 2003), *abrogated on other grounds by Adams v. Zarnel (In re Zarnel),* 619 F.3d 156 (2d Cir. 2010). This requires that a court analyze "whether there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt." *In re BDC 56 LLC*, 330 F.3d at 117 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)). A bona fide dispute exists if "there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *Id*. "[T]he legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *Id*.

13

(quoting *In re Lough*, 5.7 B.R. 993, 997 (Bankr. E.D. Mich. 1986)). Importantly, while a court must determine whether a bona fide dispute exists, "[the court] is not to actually resolve the dispute." *Id.* at 118 (citing *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991) (internal quotations omitted)).

While pending litigation by itself "is insufficient to establish the existence of a bona fide dispute," the existence of "pending litigation over a claim strongly suggests" the presence of a bona fide dispute. *In re TV Azteca, S.A.B. de C.V.*, No. 23-10385 (LGB), 2023 WL 8059362, at *7 (Bankr. S.D.N.Y. Nov. 20, 2023) (quoting *Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 234 (2d. Cir. 2015) (internal quotations omitted) (citations omitted); *see also In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) ("The plethora of ongoing litigation that involves the same nucleus of facts speaks strongly to the likelihood that there is a bona fide dispute in this case.").

The Second Circuit has not addressed whether a dispute of any portion of the petitioning creditor's claim renders the claim in bona fide dispute even if a certain dollar amount of the claim is undisputed. *In re Koffee Kup Bakery, Inc.*, No. 21-10168, 2022 WL 141516, at *6 (Bankr. D. Vt. Jan. 14, 2022). In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), Congress inserted the phrase "as to liability or amount" in § 303(b)(1) following the phrase "bona fide dispute." *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712, n. 8 (Bankr. S.D.N.Y. 2007) (Bernstein, J.) (citing Pub.L. No. 109–8, §§ 1234(a)(1)(A) and (a)(12), 119 Stat. 23 (April 20, 2005)). However, *every* circuit court and district court in the Southern District of New York, and the majority of other courts in the Second Circuit who have addressed the issue, have concluded that a creditor whose claim is the subject of a bona fide dispute as to liability or

14

amount is not eligible to be a petitioning creditor even if a portion of the their claim amount is undisputed and that amount meets the statutory threshold to file a petition under § 303(b)(1).[64]

"[W]here a claim for offset arises out of the same transaction and is directly related to the creditor's underlying claim, and, if valid, could serve as a complete defense to that claim, a bona fide dispute exists." *In re Manolo Blahnik USA, Ltd*., 619 B.R. 81, 92-93 (Bankr. S.D.N.Y. 2020) (Glenn, J.) (quoting *In re BDC 56 LLC*, 330 F.3d at 120). Thus, "[a] counterclaim related to the subject matter of the petitioning creditors' claims may be considered by the bankruptcy court in determining whether there is a bona fide dispute as to the petitioning creditors' claims." *Id.* (quoting *In re Quinto & Wilks, P.C*., 531 B.R. 594, 605 (Bankr. E.D. Va. 2015). For example, in *Manolo Blahnik*, the sole petitioning creditor was the manufacturer and licensor of the goods distributed by the debtor, the exclusive licensee. The debtor did not dispute the unpaid invoices that were due and owning the petitioning creditor. However, the debtor asserted that the petitioning creditor's claim was subject to a bona fide dispute because the debtor held a claim against the petitioner arising from the creditor's tortious interreference with the debtor's ability to receive payment for the goods from Neiman Marcus. According to the debtor, the funds received from Neiman Marcus would have paid the amounts due to the petitioning creditor. Judge Glenn concluded that the tortuous interference claim, which was supported by a declaration submitted by the debtor, was related to the subject matter of the petitioning creditors' claim. *Id*. at 97.

---

[64] *State Dep't of Revenue v. Blixseth*, 942 F.3d 1185-86 (9th Cir. 2019); *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016); *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.),* 741 F.3d 651, 660 (5th Cir. 2014); *In re Pivar*, No. 23-10938 (JLG), 2024 WL 823035, at *8 (Bankr. S.D.N.Y. Feb. 27, 2024); *In re TV Azteca, S.A.B. de C.V.,* 2023 WL 8059362, at *7-9; *In re Koffee Kup Bakery, Inc*., 2022 WL 141516, at *7; *In re Euro-American Lodging Corp*., 357 B.R. at 712, note 8; *In re Taub*, 439 B.R. 261, 275 n.3 (Bankr. E.D.N.Y. 2010) (Craig, J.); *In re Mt. Daifexries, Inc*., 372 B.R. 623 (Bankr. S.D.N.Y. 2007) (Morris, J.); *cf. In re EM Equipment, LLC*, 504 B.R. 8 (Bankr. D. Conn. 2013) (adopting minority view).

15

Accordingly, Judge Glenn found that the petitioning creditor's claim for unpaid invoices was the subject of a bona fide dispute and dismissed the involuntary petition.

Through the HK Writ, the Debtor and XRE seek various forms of relief against the HK Defendants, including Cithara Global SPC, arising from the Xin Investment Loss, including a declaration that the HK Defendants hold the 100M Notes as constructive trustees for the Debtor and XRE, and an order that the HK Defendants transfer the $100M Notes or the value derived from the notes to XRE.[65] While the Investment Scheme was not memorialized in the offering materials for the Cithara Series 3 Fund, the record establishes that XRE, with funds provided by the Debtor, entered into the Investment Scheme with the HK Defendants. In a "Special Matters Application" dated January 28, 2021, a representative of the Debtor requested approval to enter into the Investment Scheme, which was approved by management the next day.[66] On or about February 2, 2021, the Debtor transferred $60,600,000 million directly into XRE's account at VCL to purchase shares in the Cithara Series 3 Fund.[67] On or about May 20, 2021, the Debtor transferred an additional $5,050,000 million directly into XRE's account at VCL to satisfy a "margin call", which resulted in XRE acquiring additional shares in the Cithara Series Fund.[68]

The Debtor's claims against Cithara Global SPC to recover the $100M Notes or the value derived from the notes would reduce or entirely eliminate the Debtor's liability under the Xinyuan

---

[65] HK Writ ¶ Relief (c) and (d).

[66] Peral Decl. Exh. 10 (Special Matters Application, dated January 28, 2021 (XINDEBTOR000000774)).

[67] *See* Peral Decl. Exh. 11 (Application for Telegraphic Transfer dated Feb. 2, 2021 made by Debtor to transfer $60,600,000 million to VCL at 00000259); Exh. 12 (Statement showing transfer of $60,600,000 into XRE's account at VCL (XINDEBTOR00000713)). The additional $600,000 was the 1% management fee payable to Cithara.

[68] HK Writ ¶ 8; Peral Decl. Exh. 15 (VCL Fund Subscription Form for Series 3 Fund showing $5 million subscription amount (XINDEBTOR00000284)); Exh. 16 (Special Matter Application dated May 11, 2021 prepared by Shao Bin (XINDEBTOR00000199)); Exh. 17 (Statement showing transfer of $5,050,000 into XRE's account with VCL (XINDEBTOR00000744)). The additional $50,000 was the 1% management fee payable to Cithara.

14% Notes held by Cithara Global SPC. And the subject matter of Cithara Global SPC's and the Bosideng Fund's claim against the Debtor – the defaulted Xinyuan 14% Notes – relates to the Xin Investment Loss arising from Cithara Investment's and Cithara Global SPC's valuation of XRE's shares in the Cithara Series 3 Fund at $0.00 when a week before the initial $0.00 valuation they valued the shares at $65 million.[69] The only assets of Cithara Series 3 Fund were Xinyuan 14% Notes and related repo contracts.[70] Indeed, the timing of the Investment Scheme to acquire $100 million of the Xinyuan 14% Notes – approved by the Debtor's management on or about January 29, 2021 and funded by the Debtor on or about February 2, 2021 – coincides with the timing of the Debtor's issuance of the Xinyuan 14% Notes on or about January 25, 2021 in the collective aggregate principal amount of $270,000,000. Accordingly, the claims of Cithara Global SPC and the Cithara Bosideng Fund are the subject of a bona fide dispute. *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d at 653, 656-60 (finding that debtor-borrower's claims against lender for fraud, promissory estoppel, breach of contract, breach of contract, and other claims rendered the lender's claim in bona fide dispute); *Manolo Blahnik*, *supra*.

Lastly, that the Cithara Bosideng Fund is not a defendant in the HK Writ does not avoid the conclusion that the claims of Cithara Global SPC and Bosideng Fund are the subject of a bona fide dispute for several reasons. As discussed below, a Segregated Portfolio like Cithara Bosideng Fund under Cayman Island law does not have the legal capacity to sue or be sued. In the event that a court rules to the contrary, the HK Plaintiffs intend to amend the HK Writ to name the Cithara Bosideng Fund as a defendant or commence a separate suit against the Cithara Bosideng Fund. In addition, a declaratory judgment that the $100M Notes are held in a constructive trust on behalf of

---

[69] *Compare* Peral Decl. Exh. 18 (Xinyuan Investment Statement (week of April 9 - April 15, 2022) (XINDEBTOR00000680) *with* Peral Decl. Exh. 19 (Xinyuan Investment Statement (week of March 26 - April 1, 2022) (XINDEBTOR00000678)).

[70] Zhang Tr. 64:19-25; 65.

the Debtor could operate to deprive the Cithara Bosideng Fund of ownership of its Xinyuan 14%

Notes and the basis for its claim against the Debtor. Lastly, while the Cithara Bosideng Fund may

have acquired their Xinyuan 14% Notes through repurchase transactions (assuming that was the

case), the Debtor has reason to believe that the repurchase transactions were vehicles to transfer

the notes from the Cithara Series 3 Fund to the Cithara Bosideng Fund. The Debtor intends to

investigate this matter further in the context of the HK Litigation.

For the above reasons, Cithara Global SPC and Cithara Bosideng Fund are not eligible to

be petitioning creditors because their claims are the subject of a bona fide dispute under § 303(b)(1)

of the Bankruptcy Code.

### b. The Cithara Bosideng Fund Lacks Standing to be a Petitioning Creditor or to Assert a Claim Against the Debtor

Cithara Bosideng Fund is a constituent fund (an *SP*) of a Segregated Portfolio Company

(an *SPC*) with no legal status of its own; as such, it lacks standing to file an involuntary petition

under Chapter 11 of the Bankruptcy Code or to directly assert a claim against the Debtor. With

the disqualification of Cithara Bosideng Fund, there are only two petitioning creditors, and the

petition fails the numerosity requirement of Code § 303(b).

The December 2020 Offering Memorandum[71] defines Cithara Global Multi- Strategy SPC

as "the Fund" and describes it as "an exempted segregated portfolio company that was incorporated

with limited liability under the Companies Law of the Cayman Islands."[72] The memorandum

cautions that "the Fund is *a single legal entity* that may operate or have assets held on its behalf or

be subject to claims in other jurisdictions which may not necessarily recognise such segregation."[73]

This disclaimer is consistent with the Cayman Islands Companies Act, which states that "[a]

---

[71] *See* Peral Decl. Exh. 1 (Offering Memorandum (Cithara0000093)).
[72] *Id.* at Cithara0000100.
[73] *Id.* at Cithara0000139.

segregated portfolio company shall be a single legal entity and any segregated portfolio of or within a segregated portfolio company shall not constitute a legal entity separate from the segregated portfolio company." *See* Cayman Is. Companies Act §§ 216, 221 (2025).[74] The SPC's characterization of itself as a single legal entity is also consistent with rulings in the Second Circuit which hold that the constituent funds, or SPs, of an SPC are not a "party in interest" under § 1109 of the Bankruptcy Code with the right to appear and be heard in Chapter 11 case. *See, e.g., Krys v. Official Comm. Of Unsecured Creditors of Refco, Inc. (In re Refco, Inc.)*, 505 F.3d 109, n.2 (2d Cir. 2007) ("While an SPC is a single legal entity, the individual cells within it are not."). Because the constituent SPs do not have any legal identity, it follows that they do not have the legal capacity to sue, or be sued, or to file an involuntary bankruptcy petition.

Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The term "party in interest" is not defined by the Code. *In re Refco Inc.*, 505 F.3d 109, 115 (2d Cir. 2007) (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)).

In *Refco*, the Second Circuit affirmed the district court's holding that the bankruptcy court did not abuse its discretion by approving a settlement between the SPC debtor and an official committee of unsecured creditors without ruling on the merits of the SPs' objections. 505 F.3d 109, 117-19. The Second Circuit concluded that investors in an SPC—including constituent SPs like Cithara Bosideng Fund here—did not have standing to object to the settlement because they were not a "party in interest" under Code § 1109 of the Bankruptcy Code. *Id.* In affirming, the

---

[74] https://www.cima.ky/upimages/lawsregulations/CompaniesAct2025Revision_1738876914.pdf (website of the Cayman Islands Monetary Authority) (last accessed on June 8, 2026).

Second Circuit observed that the term "party in interest," as used in § 1109(b), is "broadly interpreted, but not infinitely expansive." *Id.* at 118 (citation omitted). Other bankruptcy courts in this district have also limited "party in interest" standing where the party seeking standing does not have a direct interest in the proceeding. *See, e.g., In re Saint Vincent's Catholic Med. Ctrs. of New York,* 429 B.R. 139, 149 (Bankr. S.D.N.Y. 2010) ("[t]he 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit") (quoting *In re Comcoach Corp.,* 698 F.2d at 573; *Southern Blvd., Inc. v. Martin Paint Stores,* 207 B.R. 57, 61 (S.D.N.Y.1997) (stating that, while a creditor of one of the debtor's creditors may be "deeply concerned about the bankruptcy proceeding, ... the party's legal rights and interests can only be asserted against the debtor's creditor, not against the debtor, and hence is not a 'party in interest' under the Second Circuit's view of section 1109"); *In re Innkeepers USA Tr.*, 448 B.R. 131, 143-44 (Bankr. S.D.N.Y. 2011) (denying party-in-interest standing to certificateholder with a merely beneficial interest in a creditor).

As an SP, the Cithara Bosideng Fund does not have standing to maintain the involuntary petition against the Debtor – only the Cithara Global SPC has standing to maintain the petition or other legal action or to assert a claim against the Debtor. Accordingly, Cithara Bosideng Fund does not qualify to be a petitioning creditor under § 303(b)(1) of the Bankruptcy Code and the numerosity requirement has not been made met for that reason.

   c.   **The Petitioners' Concealed Scheme to Acquire their Claims against the Debtor Establishes Cause to Dismiss the Involuntary Petition under § 1112(b) of the Bankruptcy Code**

Even if an involuntary petition satisfies the statutory requirements of § 303, the court may nonetheless dismiss the case for "cause" under § 1112(b). *See In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 600–01 (Bankr. S.D.N.Y. 2018) (dismissing involuntary chapter 11 petition filed by noteholders against non-operating company based on holding in *In re Murray*, 900 F.3d

20

53, 57 (2d Cir. 2018), an appeal arising from a chapter 7 case). Section 1112(b) authorizes dismissal of a case for cause when it is in the best interest of the creditors and the estate to do so. Section 1112(b) lists circumstances, which are illustrative and not exhaustive, that constitute cause to dismiss a case and grants the bankruptcy court broad equitable discretion to grant relief based upon the facts and circumstances of a particular case. *Id*. at 600. "The bankruptcy court has this discretion whether dismissal is sought on a basis specified in the Code, or on bad faith or other unenumerated cause ... 'A bankruptcy court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause.'" *In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) (quoting *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 67 (E.D.N.Y. 2012)).

"Inappropriate use of the Bankruptcy Code may constitute cause to dismiss ...." *Murray*, 900 F.3d at 60.  A court "need not . . . classify misuse of the Bankruptcy Code as bad faith in order to accept it as cause to dismiss, particularly when . . . misuse is one of a number of factors supporting cause to dismiss." *Id*. at 61. In *Murray*, the Second Circuit agreed with the Bankruptcy Court that there was cause to dismiss on the grounds that the involuntary petition was part of a long-running, two-party dispute and it had been brought solely as a judgment enforcement device for which adequate remedies existed in state law, the alleged debtor did not want or need a discharge, and no other goal of bankruptcy, such as *pari passu* distribution among competing creditors, would be served by the case. *Id*. at 61.

Mr. Song's dishonesty and Cithara's underhanded recruitment of allied noteholders to take legal action against the Debtor reveals the petitioners' bad faith motivations in connection with the involuntary petition.

21

Mr. Song's false statements under oath about the circumstances surrounding the petitioners' acquisition of the notes should, standing alone, constitute cause for dismissal. Mr. Song and Jun Zhang collectively hold two-thirds of the shares in Vision Group. Both Mars Partner and Star Freight used Vision as their broker to acquire the Xinyuan 14% Notes. Mr. Song was repeatedly asked during his deposition whether he has any ownership interest in Vision or Vision Group, and each time Mr. Song responded that he does not.

In addition, Cithara's previously concealed scheme to recruit Star Freight and Mars Partner to file the petition further establishes the Petitioners' bad faith. Jun Zhang, Cithara's owner and co-founder, holds a one-third ownership interest in the Vision Group, and Cithara and Vision maintain offices immediately next to each other and share a common entrance and reception area. Mars Partners is an investor in the Cithara Bosideng Fund. Mars Partner and Star Freight purchased their Xinyuan 14% Notes when those notes were in default, and then enlisted the same Vision Broker, who referred Mars Partner and Star Freight to the same Hong Kong counsel, Ashurst, currently represents all of the Petitioners.

Star Freight's acquisition of its notes especially reveals how Cithara improperly engineered satisfaction of the numerosity requirement in § 303(b)(1) of the Bankruptcy Code. While the Petitioners may have technically satisfied the numerosity requirement (assuming arguendo that the Cithara Bosideng Fund has standing to be a petitioner), the steps they took to comply with that requirement is a factor that firmly weighs in favor of finding cause for dismissal. "Although numerosity is a statutory requirement, it has an equitable component as well. The numerosity requirement is based 'on strong policy considerations, which include the fear that one or two recalcitrant creditors might file an involuntary case to harass a debtor.'" *In re Metrogate, LLC*, No. 15-12593 (KJC), 2016 WL 3150177, at *13 (Bankr. D. Del. May 26, 2016) (quoting 2 Collier on

22

Bankruptcy ¶ 303.14[2]); *see also In re Tichy Elec. Co.*, 332 B.R. 364, 377 (Bankr. N.D. Iowa 2005).

Star Freight is in the business of international trade and freight forwarding.[75] Other than the Xinyuan 14% Notes, it currently holds one other type of bond.[76] Star Freight purchased the Xinyuan 14% Notes having an aggregate face value of $300,000 for $57,000 on April 19, 2024 several months two months after Mars Partner purchased the Xinyuan 14% Notes on or about February 23, 2024.[77] Star Freight's holding of Xinyuan 14% Notes is paltry compared to the face amounts held by Cithara ($58,500,000) and Mars Partner ($7,000,000). Several months after Star Freight bought the Xinyuan 14% Notes, Mr. Zhu contacted Ashurst, the same law firm that the Vision Broker recommended to Mars Partner, and the same law firm currently representing all of the Petitioners.[78] The Rule 1003(a) declarations submitted by Petitioners attach emails from Ashurst dated August 13, 2024 to the Indenture Trustee requesting authorization to commence proceedings against the Debtor and guarantor.[79] The "several month" period between when Star Freight acquired the defaulted notes and when it contacted Ashurst with respect to the notes firmly establishes that Star Freight acquired the Xinyuan 14% Notes for the purpose of joining the other Petitioners in litigation against the Debtor.

Star Freight's recruitment by Cithara through the Vision Broker was an improper attempt to satisfy the numerosity requirements and strongly weighs in favor of dismissal. *See In re PTGi Int'l Carrier Servs., Inc.*, 668 B.R. 517, 523 (Bankr. D. Del. 2025) (dismissing an involuntary petition on bad faith grounds because, *inter alia*, one creditor recruits the other two petitioning

---

[75] Xiang Tr. 12:6-10.
[76] Xiang Tr. 60:6-18; 66:9-19.
[77] *See* ECF No. 1-6 at pg. 4.
[78] Xiang Tr. 38:13-39:5.
[79] *See* ECF No. 1-2 at pgs. 14-16.

creditors to join the petition); *see also In re Metrogate*, LLC, 2016 WL 3150177, at \*13.

For the above-reasons, there is cause to dismiss the involuntary petition pursuant to §

1112(b) of the Bankruptcy Code.

<h3 style="text-align:center">IV.      RESERVATION OF RIGHTS</h3>

The Debtor reserves the right to seek to recover its fees, costs, and damages against the

Petitioners pursuant to § 303(i) of the Bankruptcy Code.

<h3 style="text-align:center">V.      CONCLUSION</h3>

Xinyuan respectfully requests that the Court enter an order dismissing the involuntary

petition and granting additional or separate relief it deems appropriate.

Dated: New York, New York      Respectfully submitted,
      June 11, 2026

      WINDELS MARX LANE & MITTENDORF, LLP
      *Attorneys for Xinyuan Real Estate Co., Ltd.,*
      *Alleged Debtor*

      By:      */s/ Eloy A. Peral*
            Eloy A. Peral (eperal@windelsmarx.com)
            Ben Kusmin (bkusmin@windelsmarx.com)
            156 West 56th Street
            New York, New York 10019
            Tel. (212) 237-1000